UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Application Pursuant to 28 U.S.C. § 1782 of
OKEAN B.V. and LOGISTIC SOLUTION
INTERNATIONAL LIMITED,

        Petitioners,

    – to take discovery of –

CHADBOURNE & PARKE LLP,

        Respondent.

Case No.
ECF Case



12MISC00104

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF OKEAN B.V.
AND LOGISTIC SOLUTION INTERNATIONAL LIMITED FOR ORDER TO TAKE
DISCOVERY FROM CHADBOURNE & PARKE LLP PURSUANT TO 28 U.S.C. § 1782**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 277-6500
Fax: (212) 277-6501

*Attorneys for Petitioners Okean B.V.
and Logistic Solution International Limited*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

Preliminary Statement ................................................................................................... 1

Factual and Procedural Background ............................................................................. 1

    The Dutch Litigation ............................................................................................... 2

    The Role and Relevance of Chadbourne to the Dutch Litigation ......................... 4

Argument ...................................................................................................................... 6

I.     OKEAN'S APPLICATION MEETS ALL THE STATUTORY REQUIREMENTS FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782. ............................................. 6

    A.    Okean Is An "Interested Party" For Purposes Of 28 U.S.C. § 1782 ....................... 6

    B.    The Discovery Is Sought For Use In A Foreign Tribunal. ..................................... 7

    C.    Chadbourne Resides And Can Be Found In The Southern District Of New York. ......................................................................................................... 8

    D.    No "Legally Applicable Privilege" Precludes The Requested Discovery. ............. 8

II.    ALL OF THE DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF THE GRANTING OF OKEAN'S APPLICATION ............................................... 12

    A.    Chadbourne Is Not A Participant In The Dutch Litigation. ................................... 13

    B.    The Dutch Courts Are Receptive To Discovery Pursuant To Section 1782 .......... 13

    C.    The Application Does Not Represent An Effort To Circumvent Dutch Proof Gathering Restrictions. ......................................................................................... 15

    D.    The Discovery Sought Is Neither Unduly Intrusive Nor Burdensome. ................. 15

        1.    Relevance of Chadbourne's Documents ................................................... 16

        2.    Accessibility of Chadbourne's Documents ............................................... 16

        3.    Inapplicability of Privilege to Chadbourne's Responsive Documents ...... 17

            a.    No privilege attaches to business "agent" documents. ................. 17

DOCSNY-497896v1

Page

       b.     No privilege for documents subject to the crime-fraud exception. ...................................................................................19

Conclusion ...................................................................................................................23

DOCSNY-497896v1

## **TABLE OF AUTHORITIES**

CASES                                                                                    Page(s)

Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 242 F.R.D. 248 (S.D.N.Y. 2007) ...........20

Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92 (S.D.N.Y. 2002) ...........................10, 11

Avery v. Lee, 117 A.D. 244 (1st Dep't 1907) ...........................................................................19

Brandie-Dohrn v. IKB Deutsche Industriebank AG, __ F.3d __, No. 11-4851-CV,
  2012 WL 695541 (2d Cir. Mar. 6, 2012) ..................................................................................7

Chevron Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011) ..........................................................10

Chevron Corp. v. Salazar, 275 F.R.D. 437 (S.D.N.Y. 2011) ......................................................22

Clark v. United States, 289 U.S. 1 (1933) ..........................................................................21, 22

Comercio e Industria Continental, S.A. v. Dresser Indus., Inc., 19 F.R.D. 265
  (S.D.N.Y. 1956) .......................................................................................................................19

Pres. Rb. Utrecht 9 April 1996, KG 1996, 158 (Convex Computer B.V./Duizendstraal)
  (Neth.) .....................................................................................................................................13

Euromepa S.A. v. R. Esmerian, Inc., 51 F. 3d 1095 (2d Cir. 1995) ........................................12, 14

Fleischmann v. McDonald's Corp., 466 F. Supp. 2d 1020 (N.D. Ill. 2006) .................................7

Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514 (S.D.N.Y. 1992) ...............................10

Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58 (S.D.N.Y. 2010) ...............................................10

Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591 (7th Cir. 2011) .......................................12

In re Application of Bank of Cyprus Pub. Co. Ltd., No. 10 Misc. 23,
  2011 U.S. Dist. LEXIS 6082 (S.D.N.Y. Jan. 21, 2011) ........................................................7, 8

In re Application of Chevron Corp., 749 F. Supp. 2d 141 (S.D.N.Y. 2010) ...............................10

In re Application of Eli Lilly & Co., No. 3:09MC296, 2010 U.S. Dist. LEXIS 59121
  (D. Conn. June 15, 2010) ........................................................................................................17

In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88,
  2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .............................................14, 15, 16, 17

In re Application of Godfrey, 526 F. Supp. 2d 417 (S.D.N.Y. 2007) ..........................................17

DOCSNY-497896v1

CASES (cont.)                                                                                        Page(s)

In re Application of Grupo Qumma, No. M 8-85, 2005 WL 937486
    (S.D.N.Y. Apr. 22, 2005)........................................................................................7

In re Application of Metallgesellschaft AG, 121 F.3d 77 (2d Cir. 1997).......................................7

In re Application Pursuant to 28 U.S.C. Section 1782, 249 F.R.D. 96 (S.D.N.Y. 2008)...............7

In re John Doe, Inc., 13 F.3d 633 (2d Cir. 1994)......................................................................22

In re OOO Promnefstroy, Misc. No. M 19-99, 2009 U.S. Dist. LEXIS 98610
    (S.D.N.Y. Oct. 15, 2009) ....................................................................................14

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) ............................6, 7, 12, 13

HR 6 Februari 1998, NJ 1999, 479 m. nt. HJS (Kinetics Technology International
    B.V./Mol) (Neth.) ..............................................................................................14

Malev Hungarian Airlines v. United Techs. Int'l Inc., 964 F.2d 97 (2d Cir.),
    cert. denied, 506 U.S. 861 (1992) ...........................................................................12

McKevitt v. Pallasch, 339 F.3d 530 (7th Cir. 2003)...................................................................10

Minatec Fin. S.a.r.l. v. SI Group, Inc., Civ. No. 1:08-CV-269,
    2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008) ........................................17

Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79 (2d Cir. 2004) ...............................6

SEC v. Herman, No. 00 CIV 5575, 2004 U.S. Dist. LEXIS 7829 (S.D.N.Y. May 5, 2004) ........21

Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371 (1991) .................................................19

United States v. Jacobs, 117 F.3d 82 (2d Cir. 1997) .....................................................20, 21, 22

United States v. Kaplan, No. 02 Cr. 883, 2003 U.S. Dist. LEXIS 21825
    (S.D.N.Y. Dec. 5, 2003).....................................................................................21

United States v. Richard Roe, Inc., 168 F.3d 69 (2d Cir. 1999).................................................20

United States v. Richard Roe, Inc., 68 F.3d 38 (2d Cir. 1995)...................................................20

United States v. Rivera, 837 F. Supp. 565 (S.D.N.Y. 1993) ......................................................21

United States v. Zolin, 491 U.S. 554 (1989)........................................................................20, 22

STATUTES

28 U.S.C.A. § 1782.................................................................................................................6, 8

DOCSNY-497896v1

Page(s)

RULES

Fed. R. Civ. P. 26(b)(1)..............................................................................................7

OTHER AUTHORITIES

S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782 .......................9, 12

DOCSNY-497896v1

Petitioners Okean B.V. and Logistic Solution International Limited (together, "Okean") respectfully submit this memorandum of law in support of their application pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order directing Chadbourne & Parke LLP ("Chadbourne") to produce certain documents in the Southern District of New York for use in pending litigation in the Netherlands.

## Preliminary Statement

The victim of a multimillion dollar fraudulent scheme, Okean has commenced litigation in the District Court of Amsterdam in the Netherlands (the "Dutch Litigation"), seeking to annul the series of interrelated sham transactions by which Okean was stripped of valuable stock and other assets. To assist Okean in prosecuting the claims in the Dutch Litigation, Okean seeks discovery of Chadbourne under Section 1782. Chadbourne is not a party to the Dutch Litigation, but was involved in many (if not all) of the fraudulent transactions. The involvement of the Chadbourne lawyers was in large part pursuant to very broad power of attorney instruments under which the Chadbourne attorneys acted as business agents for certain principal companies – the same companies who are named in the Dutch Litigation. Further, the role that these Chadbourne attorneys played in this orchestrated series of improper transactions was one that appears to have enabled and furthered the fraudulent scheme.

Because Okean's Section 1782 application meets all of the statutory requirements for discovery and all of the discretionary factors weigh in favor of ordering the requested disclosure, the application should be granted, and Chadbourne should be directed to produce the subpoenaed documents.

## Factual and Procedural Background

The nature of the Dutch Litigation for which Okean seeks discovery is set out in detail in the Dutch Writ of Summons attached as Exhibit B to the accompanying Declaration of Deborah

A. Skakel, dated April 4, 2012 (the "Skakel Declaration"). For case reference, a brief summary of the background of that case and facts relevant to Okean's application is provided below.

**The Dutch Litigation**

By means of a carefully orchestrated series of fraudulent conveyances, Okean was swindled out of stock shares and other valuable assets worth millions of dollars. The fraudulent scheme was effectuated by means of two related and parallel components:

(1)    the transfer of Okean's 98.74% interest (the "Shares") in the Ukranian shipping company Wadan Yards Okean Open Joint Stock Company ("Wadan Yards") to Blakur Company Inc. ("Blakur") for a sham promissory note; and the successive transfers of the Shares from Blakur to a number of companies, including Olympus Investments (2001) B.V. ("Olympus") and Private Joint-Stock Company Smart-Holding ("Smart-Holding"); and

(2)    the assignment of debts owed to Okean (the "Loans") – totaling over EUR 50 million – to Blakur for a mere USD 200; and the successive transfer of the EUR 50 million asset to two Cypriot companies, Poizanter Holdings Limited ("Poizanter") and Fradomna Investments Limited ("Fradomna").

Skakel Decl. ¶ 8.

The timing and effect of the transfer of the Shares and the assignment of the Loans underscore the interrelatedness and common purpose of the multiple transactions. Blakur was formed just prior to entering into the Share Sale and Purchase Agreement under which it obtained the Shares in return for a sham note. Id. ¶ 9. About a week after obtaining the Shares, Blakur acquired the Loans receivable of almost EUR 50 million for a mere USD 200. Id. Approximately two months after that, Blakur transferred the Loans to Poizanter and Fradomna. Id. The effect of the transfer of the Loans from Okean to Blakur, and from Blakur to Poizanter and Fradomna has been to leave Poizanter and Fradomna (who paid no consideration) as the major creditors of Wadan Yards, which is currently undergoing bankruptcy proceedings in Ukraine. Id. Shortly after the transfer of the receivables to Poizanter and Fradomna, both

DOCSNY-497896v1

companies were granted extremely favorable security rights by the management of Wadan Yards; and the decision to grant these rights was taken by Wadan Yard's management a mere three days before the date of transfer.  Id.  Although there were various references in the documents to the prospect of each of Blakur, Poizanter and Fradomna providing further financing to Wadan Yard, no such financing was made available – resulting in the Wadan Yards bankruptcy.  Id.

Equally well-orchestrated were the components of the transactional scheme by which Olympus and Smart-Holding have ended up with Okean's lucrative Shares in Wadan Yards. Incorporated in January 2010, Blakur entered into the sham Share Purchase and Sale Agreement in February 2010, amended that agreement in March 2010 (making payment of any consideration for the Shares even more illusory), transferred that Shares to AELITA in April 2010, and then voluntarily dissolved – having paid (and presumably received) nothing for the Shares.  Id. ¶ 10.

From AELITA, the Shares were transferred to five different Panamanian and British Virgin Island companies; and from those five companies, the Shares went to Olympus.  In February 2012, according to press reports, Olympus entered into an oral agreement with Smart-Holding to sell 50% of the Shares.  Underscoring the fraudulent nature of these carefully crafted transactions is the Ukrainian Business Report Daily article (Writ, Ex. 22) in which it is reported that, while the local authorities were not able to establish the identity of the actual shareholders (i.e., who owned the Shares), Smart-Holding "had managed to do this."  Id. ¶ 11.

Okean's claims in the Dutch Litigation are against Blakur, Olympus, Smart-Holding, Poizanter, Fradomna, and Judith Hamburger, the sole director of Blakur ("Hamburger").  Okean has asserted the Dutch equivalent of a fraudulent conveyance claim to set aside the transactions by which the Shares and the Loans were fraudulently transferred to the defendants and a Dutch

3

claim for damages based on the defendant's acquisition of the Shares and the Loans by "gratuitous title" – i.e., not in good faith and in knowing or reckless disregard for the title. Id. ¶ 12.

**The Role and Relevance of Chadbourne to the Dutch Litigation**

Chadbourne was very much a part of the transactions that are the subject of the Dutch Litigation.  The involvement of the Chadbourne attorneys takes a variety of forms:

- Chadbourne attorneys acted on behalf of both sides of many of the transactions – i.e., on behalf of all of Blakur, Poizanter and Fradomna.

- On the Blakur side of the transactions, several Chadbourne attorneys were designated as proxies by Blakur under two power of attorney instruments dated March 26, and April 8, 2010.  Skakel Decl. Exs. B-C.

- Under the Blakur power of attorney, five Chadbourne attorneys were appointed and authorized by Blakur (acting through Hamburger) to act "on [Blakur's] behalf" to do a number of acts, including entering into the "Pledge Agreement" and "Mortgage Agreement" between Blakur and Wadan Yards – the type of "Security Agreements" that were intended to facilitate the transfer to Blakur of the security rights in the Loan receivables belonging to Okean, which were transferred to Poizanter and Fradomna – as described in the Writ.  Skakel Decl. Ex. A ¶¶ 19-20, Ex. C.

- Four of those same Chadbourne attorneys were designated as business "agents" by Poizanter and Fradomna under very broad power of attorney instruments, dated May 5, and May 3, 2010, respectively.  Skakel Decl. Exs. D-E.

- Under the Poizanter and Fradomna power of attorney instruments, four identified "lawyers of Chadbourne & Parke LLP" were granted "the power and authority" to do a multitude of acts, including "to enter into, sign and execute any agreements on behalf of the Principal, including, but not limited [sic], . . . loan agreements, assignment facility agreements to provide funds to the Company and any other agreements at agent's discretion."  Skakel Decl. Exs. D-E (emphasis added).

- The Poizanter and Fradomna power of attorney instruments specifically referenced the second transactional link of the fraudulent scheme at issue in the Dutch Litigation.  The Chadbourne lawyers, as agents for Poizanter and Fradomna, had the power and authority to do the following:

    "to enter into, amend, terminate, sign and execute on behalf and for the interests of the Principal the mortgage agreement and pledge agreement (Principal acting as a mortgagee/pledgee) with Open

4

Joint Stock Company 'Wadan Yards Okean' (identification code 14307653) <u>on the terms at the agents' discretion</u>, as well as signing any other security documents, submit any documents, sign applications, receive extracts necessary for the registration of the respective encumbrances with appropriate Ukrainian registers, including but not limited to the Unified Register of Prohibitions to Alienate Real Estate, State Register of Encumbrances over Movable Property, State Register of Mortgages, etc.;

to enter into, amend, terminate, sign and execute on behalf and for the interests of the Principal the Deeds of Assignment and Amendment to Term Loan Facility No. 1, 4 and 5 by and among Blakur Company Inc. as the original lender, Open Joint Stock Company 'Wadan Yards Okean' as the borrower, and the Principal as the new lender, <u>on the terms at the agents' discretion</u>;

to prepare, sign, amend, execute, file, submit to and receive from the appropriate governmental authorities and any other organizations or institutions any and all documents and information in connection with and for the purposes of any of the actions described above."

Skakel Decl. Exs. D-E (emphasis added); <u>see also</u> <u>id.</u> Exs. F-G.

- Given the several transactional documents on which the claims in the Dutch Litigation are based in part, it is clear that at least three of the four Chadbourne attorneys functioned under these power of attorney instruments, including by executing at least six of the transactional documents that are the subject of the Writ in the Dutch Litigation. Skakel Decl. Exs. H-M.

- One of the Chadbourne attorneys appointed under the Blakur April 2010 power of attorney instrument also executed the claims of Poizanter and Fradomna in the Wadan Yards bankruptcy. Likewise, the claim of Olympus in the Wadan Yards bankruptcy, which was signed by Olympus's sole director, lists Chadbourne's office address for Olympus, indicating that Chadbourne is acting on behalf of yet another company that participated in the fraudulent scheme with respect to yet another transactional step of that improper scheme. Skakel Decl. Exs. O-Q.

- Many of the transactional documents contain the recognizable Chadbourne "footer" – the distinctive word processing reference on the bottom left hand corner of several of the documents Chadbourne drafted, including all of the power of attorney instruments as well as the Share Sale and Purchase Agreement, dated February 26, 2010 (under which Blakur obtained the Shares – but paid nothing) and the multiple Pledge Agreements. Another of these Chadbourne-prepared documents is a March 31, 2010 letter indicating that Chadbourne was coordinating the improper transfers of the Loans among Okean B.V., Blakur, and Wadan Yards. Skakel Decl. Exs. B-E, K-N, T.

DOCSNY-497896v1

## Argument

### I.     OKEAN'S APPLICATION MEETS ALL THE STATUTORY REQUIREMENTS FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782.

Section 1782 permits federal courts to assist foreign litigants and other interested parties in gathering evidence in the United States for use in foreign proceedings.  See 28 U.S.C.A. § 1782; see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 262 (2004). Pursuant to the statute, any party with an interest in a foreign legal proceeding may apply to the district court for discovery within the district:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C.A. § 1782(a).  A district court may issue an order for discovery under Section 1782 where (1) the request is made by an interested party; (2) for material to be used in a foreign tribunal; and (3) the party for whom the request is made resides in the district in which the court sits.  See Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004).  All of these three requirements are met by Okean's application.

### A.     Okean Is An "Interested Party" For Purposes Of 28 U.S.C. § 1782.

The Supreme Court, in Intel, unequivocally held that litigants in the foreign proceeding qualify as interested parties under the statutory requirements.  Indeed, the Intel court noted that a foreign litigant "may be the most common example of, the 'interested person[s]' who may invoke § 1782."  Intel, 542 U.S. at 256 (alteration in original).  As the claimants in the Dutch Litigation, Okean self-evidently qualify as litigants in that litigation, and therefore, as interested parties to it for Section 1782 purposes.

6

**B.    The Discovery Is Sought For Use In A Foreign Tribunal.**

The documents Okean seeks from Chadbourne meet the second requirement of the statute, as they are for use in a foreign tribunal.  This requirement of Section 1782 has been consistently held to "mirror[ ] the requirements in Federal Rule of Civil Procedure 26(b)(1)." Fleischmann v. McDonald's Corp., 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006).  See also In re Application Pursuant to 28 U.S.C. Section 1782, 249 F.R.D. 96, 106 (S.D.N.Y. 2008).  As such, the discovery need simply be "relevant to any party's claim or defense" or "[f]or good cause, . . . any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  Under this standard, as applied to a Section 1782 application, there is no requirement that the discovery sought be admissible in the foreign tribunal.  See Intel, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").[1]  In applying Section 1782, courts have emphasized the twin aims of the statute: "'"providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"'  In re Application of Bank of Cyprus Pub. Co. Ltd., No. 10 Misc. 23, 2011 U.S. Dist. LEXIS 6082, at *5-6 (S.D.N.Y. Jan. 21, 2011) (quoting In re Application of Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997)).

---

[1]    Further, the law leaves the question as to the admissibility of Chadbourne's documents obtained through this Section 1782 request to the consideration of the judge in the Dutch Litigation, not to this Court.  See Brandie-Dohrn v. IKB Deutsche Industriebank AG, __ F.3d __, No. 11-4851-CV, 2012 WL 695541, at *5-7 (2d Cir. Mar. 6, 2012) (holding there is no statutory basis for any admissibility requirement under Section 1782); In re Application of Grupo Qumma, No. M 8-85, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first.  If the § 1782 application were to be denied, Qumma would be deprived of any opportunity even to try to offer the evidence.").

7

### C.   Chadbourne Resides And Can Be Found In The Southern District Of New York.

Okean makes its application for discovery from Chadbourne under Section 1782 in this district, because Chadbourne resides and can be found in this district.   In determining the location of an individual or entity from which discovery is sought pursuant to Section 1782, courts look to determine the location where the individual or entity resides.  See, e.g., Bank of Cyprus, 2011 U.S. Dist. LEXIS 6082, at *6-7.  Chadbourne maintains principal offices in this district.  According to its website, Chadbourne's New York office, located at 30 Rockefeller Plaza, New York, New York, "serves as the headquarters of Chadbourne."[2] Skakel Decl. App. 1.

### D.   No "Legally Applicable Privilege" Precludes The Requested Discovery.

While under Section 1782, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege," (28 U.S.C.A. § 1782 (a)), here, there is no such "legally applicable privilege."

Specifically, as set forth in Point II.D.3 below, the attorney-client privilege under governing New York law does not apply because the Chadbourne attorneys were functioning as business agents under the Poizanter and Fradomna Power of Attorney instruments (such that no privilege attached) and, in any event, the crime-fraud exception removes the privilege from those Chadbourne communications related to and in furtherance of the underlying fraudulent transactions that are the subject of the Writ in the Dutch Litigation.[3]

Nor have we overlooked that Chadbourne may contend that, because the attorneys designated under the Power of Attorney instruments and who otherwise worked on the

---

[2]   CHADBOURNE & PARKE LLP, http://www.chadbourne.com/newyork/ (last visited Mar. 26, 2012) ("The New York office serves as the headquarters of Chadbourne & Parke.").

[3]   Okean does not any seek documents prepared by Chadbourne in connection with litigation; nor are the requested documents that fall within the crime-fraud exception protected by a work product or litigation privilege.

8

fraudulent transactions described in the Writ were based in Chadbourne's Kiev office, Ukraine privilege law should apply.  It would be improper for the Court to do so, for the reasons discussed below.  Initially, we note that Ukraine is a civil law country in which discovery such as that typically found in American litigation is unavailable.  Declaration of Svitlana M. Romanova Pursuant to 28 U.S.C. § 1746 in Support of Application for Order to Conduct Discovery From Chadbourne & Parke LLP Pursuant to 28 U.S.C. § 1782 For Use in Foreign Legal Proceedings, dated April 4, 2012 ¶ 4.  Further, the competence of Ukrainian courts to seek information from certain categories of witnesses is limited.  Id. ¶ 5.  Specifically, licensed attorneys who are members of the Ukrainian bar (known as "advocates") are regulated by legal provisions that recognize a broad privilege applicable to the essence of the client assignment, received legal consultations, advice and explanations, as well as other information obtained by the advocates upon conducting their professional activities.   Id.   Indeed, the privilege extends to all communications of the advocate engaging in any of the numerous "professional activities" set forth in Article 5 of the Law of Ukraine "On the Bar" (id. ¶ 6) and can be pierced only to provide discovery in a criminal investigation of the attorney or the client (id. ¶ 7).

In undertaking the choice-of-law analysis here, it is salient that the legislative history regarding this "legally applicable privilege" provision of Section 1782 observed that "the law in this area is still developing and the desirability of uniform rules of evidence for the district courts is currently under consideration."  S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3790.  In that regard, Okean is unaware of any federal case analyzing which country's attorney-client privilege rules should apply to documents sought pursuant to a Section 1782

request.[4]  We therefore seek guidance from Second Circuit cases that have engaged in such an analysis outside the Section 1782 context.

Where, as here, alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this Court will undertake a contacts analysis, referred to as the "touch base" test, and will defer to the law of the country that has the "predominant" or "the most direct and compelling interest" in whether those communications should remain confidential, <u>unless</u> that foreign law is contrary to the public policy of this forum.   <u>Golden Trade, S.r.L. v. Lee Apparel Co.</u>, 143 F.R.D. 514, 523 (S.D.N.Y. 1992) (holding that application of foreign privilege law to communications between plaintiff's foreign patent agents and its licensee regarding foreign patent prosecutions did not "undermine any compelling policy interest reflected in domestic law governing privilege claims").   <u>See Astra Aktiebolag v. Andrx Pharms., Inc.</u>, 208 F.R.D. 92, 97 (S.D.N.Y. 2002) (holding that Rule 501 of the Federal Rules of Evidence provides that questions of privilege in a federal question case are "governed by the principles of common law as they may be interpreted by the courts of the United States" and includes "choice of law" questions); <u>Gucci Am., Inc. v. Guess?, Inc.</u>, 271 F.R.D. 58, 64 (S.D.N.Y. 2010) (holding that while many of the communications in question arose in Italy, the communications "touched base" with the United States, and therefore the applicability of the attorney-client privilege was governed by American law).

The analysis by Judge Barbara Jones in <u>Astra</u> is particularly instructive.  There, the Court applied the "touch base" test in a patent case to certain communications with the plaintiff's

---

[4]      Federal courts have discussed other matters concerning claims of privilege arising from Section 1782 requests, including application of the crime-fraud exception to attorney-client privilege (see, e.g., <u>In re Application of Chevron Corp.</u>, 749 F. Supp. 2d 141 (S.D.N.Y. 2010)) and the reporters' privilege (see, e.g., <u>Chevron Corp. v. Berlinger</u>, 629 F.3d 297 (2d Cir. 2011); <u>McKevitt v. Pallasch</u>, 339 F.3d 530 (7th Cir. 2003)).

German and Korean lawyers, holding that, even though the communications did not "touch base" with the United States, it would apply "our own" privilege law to the Korean documents. <u>Astra</u>, 208 F.R.D. at 102.  In doing so, the Court reasoned that to follow Korean attorney-client privilege law "in a vacuum" and outside of the context of Korean discovery law, which – like Ukrainian law – permits only minimal discovery, "would offend the very principles of comity that choice-of-law rules were intended to protect." <u>Id.</u> Judge Jones also found that, while courts use choice-of-law rules to determine whether to apply another forum's substantive law, they always use their own <u>procedural</u> rules; thus, since the law regarding document disclosure is procedural, U.S. discovery rules should apply.  <u>Id.</u> In ruling with respect to the documents that she had reviewed in camera (consistent with the Second Circuit practice), Judge Jones ordered that documents wholly subject to attorney-client privilege or the work-product rule under federal law would not be disclosed, documents that could be redacted to preserve attorney-client privilege or work-product protections should be produced in redacted form, and documents that the Court found contained neither confidential information nor legal advice rendered by an attorney should be produced in their entirety. <u>Id.</u> at 104-07.

As in <u>Astra</u>, the law of the foreign jurisdiction (Ukraine) significantly limits the courts' subpoena power, resulting in a very little third-party discovery.  Because Section 1782 discovery is governed by the Federal Rules of Civil Procedure, as in <u>Astra</u>, the privilege issues related to the discovery are procedural in nature.  Thus, "our own" privilege law (rather than that of the Ukraine) should apply.[5]

---

[5]      This is particularly so where application of Ukrainian privilege law would be contrary to the public policies underlying Section 1782 as well as those regarding well-established exceptions to the privilege.

DOCSNY-497896v1

The approach and rationale of Judge Jones in <u>Astra</u> is in keeping with the established practice of applying federal discovery rules to Section 1782 requests. <u>See</u> S. Rep. No. 1580, 1964 U.S.S.C.A.N. at 3789 (stating that discovery sought under Section 1782 must, in the absence of a contrary order by the district court, comply with Rule 26 and the other rules governing discovery in federal courts); <u>Euromepa S.A. v. R. Esmerian, Inc.</u>, 51 F. 3d 1095, 1100 n.4 (2d Cir. 1995) (any limitations upon discovery that would be available under Rule 26 of the Federal Rules of Civil Procedure pertaining both to privileged and trial preparation matters and to protective orders, are also available under Section 1782(a) as the district court may provide); <u>Heraeus Kulzer, GmbH v. Biomet, Inc.</u>, 633 F.3d 591, 593 (7th Cir. 2011) ("So a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court [through a Section 1782 application], and, in the discretion of that court can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." (citations omitted)). Applying federal discovery and privilege rules to the documents that Okean here seeks would best allow this Court to realize the "twin aims" of Section 1782, i.e., "of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." <u>Malev Hungarian Airlines v. United Techs. Int'l Inc.</u>, 964 F.2d 97, 100 (2d Cir.), <u>cert. denied</u>, 506 U.S. 861 (1992).

## II.    ALL OF THE DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF THE GRANTING OF OKEAN'S APPLICATION

Where, as here, the statutory requirements of Section 1782 have been met, it remains within the court's discretion as to whether to order the requested disclosure, taking into account the statute's twin aims. <u>See</u> <u>Intel</u>, 542 U.S. at 255. In exercising this discretion, the district court is to consider: (i) whether the person from whom discovery is sought is a participant in the

12

relevant foreign proceeding who is subject to discovery in that jurisdiction; (ii) the nature of the foreign tribunal, the character of the proceedings underway and the receptivity of the foreign government, court or agency to federal judicial-court assistance; (iii) whether the application conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and (iv) whether the discovery sought is unduly intrusive or burdensome. Id. at 264-65.

### A.   Chadbourne Is Not A Participant In The Dutch Litigation.

Weighing in favor of Okean's application is the fact that Chadbourne is not a participant in the Dutch Litigation.   Courts have held that the necessity of Section 1782 discovery is particularly apparent when the entity from whom discovery is sought is not a participant in the corresponding foreign litigation or proceeding.  See Intel, 542 U.S. at 264.  Where, as here, such an entity is not a party to the foreign proceeding and not within the jurisdiction of that proceeding, that entity, and the relevant information in its possession, can ultimately fall beyond the reach of that foreign proceeding.  Addressing this very issue is considered a primary purpose of Section 1782 – to assist foreign tribunals in obtaining relevant information that they cannot obtain under their own laws.  See id.

Because Chadbourne is not a party to or participant in the Dutch Litigation, and falls outside the reach of the Dutch court's jurisdiction, this factor weighs in favor of the requested discovery.

### B.   The Dutch Courts Are Receptive To Discovery Pursuant To Section 1782.

Also weighing in favor of Okean's Section 1782 application is the fact that Dutch courts are receptive to Section 1782 type assistance.  See Pres. Rb. Utrecht 9 April 1996, KG 1996, 158 (Convex Computer B.V./Duizendstraal) (Neth.) (ruling that a party may employ "informal judicial methods" such as a Section 1782 discovery order to gather evidence without objection

DOCSNY-497896v1

by the Dutch courts); HR 6 Februari 1998, NJ 1999, 479 m. nt. HJS (Kinetics Technology International B.V./Mol) (Neth.) (holding that evidence obtained via pre-trial discovery in U.S. courts may be used in proceedings before Dutch national courts and its use does not necessarily grant an "unfair advantage" to the discovering party).[6]  See also In re OOO Promnefstroy, Misc. No. M 19-99, 2009 U.S. Dist. LEXIS 98610, at *19-20 (S.D.N.Y. Oct. 15, 2009) (finding that the courts of the Netherlands were receptive to discovery obtained under Section 1782, but denying the discovery request on other grounds).

The Second Circuit has provided instructive guidance on this point:

> We think that it is unwise–as well as in tension with the aims of section 1782–for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. . . . [W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the "twin aims" of the statute.

Euromepa, 51 F.3d at 1099-1100.  Thus, courts must look for "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." Id. at 1100.  In the absence of such proof, "the Second Circuit has instructed that district courts generally should err on the side of permitting the requested discovery." In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (citing Euromepa, 51 F.3d at 1101).  Here, because of the clear indications that Dutch courts are amenable to evidence gathered by grants of Section 1782 requests, the second discretionary factor also weighs in favor of Okean's application.

---

[6]     Sworn translations of these two decisions are annexed hereto as Appendix A.

**C.      The Application Does Not Represent An Effort To Circumvent Dutch Proof Gathering Restrictions.**

Furthermore, the discovery sought cannot be seen to be an attempt to circumvent Dutch proof gathering restrictions.[7]  The Netherlands District Court of Amsterdam, where the Dutch Litigation is pending, is a trial court that customarily receives witness testimony and documentary evidence.  See The Dutch Judicial System, International Institute for the Unification of Private Law (UNIDROIT), http://www.unidroit.info/mm/TheDutchJudicial System.pdf (last visited Mar. 22, 2012).  The court in the Dutch Litigation has neither been requested to take, nor has it taken, any action to preclude Okean from seeking documents from Chadbourne, and Dutch law does not require Okean to seek such discovery in the Netherlands before making an application under Section 1782.  Consequently, the application can in no way be seen as an effort to circumvent the foreign tribunal's proof gathering restrictions, let alone a bad faith effort to do so.  As such, the third factor also weighs in favor of Okean's application.

**D.      The Discovery Sought Is Neither Unduly Intrusive Nor Burdensome.**

Okean's application for discovery from Chadbourne is narrowly and appropriately tailored to minimize any intrusion or burden on Chadbourne.  In considering the fourth factor, the court is to consider the discovery requests encompassed in the application and determine whether they are "unduly intrusive or burdensome," or whether they are  "sufficiently tailored to the litigation issues for which production is sought."  Gemeinshcaftspraxis, 2006 WL 3844464, at *8.

---

[7]      Courts will not weigh the third factor against the Section 1782 application in any event, absent bad faith on the part of the Section 1782 applicant.  See Gemeinshcaftspraxis, 2006 WL 3844464, at *7.

DOCSNY-497896v1

1.     **Relevance of Chadbourne's Documents**

Here, Okean requires relevant information from Chadbourne with respect to its activities in connection with the multiple transactions underlying the unlawful scheme involving the fraudulent transfer of Wadan Yards shares and the unlawful assignment of receivables owed to Okean. In particular, the request seeks documents concerning the communications and activities of the Chadbourne lawyers appointed under the broad Power of Attorney instruments concerning the series of interrelated fraudulent transactions. The request is tailored to just those matters that are likely to be relevant to the Dutch Litigation, involve the Chadbourne attorneys, and are therefore likely to and should be in the possession of Chadbourne.

2.     **Accessibility of Chadbourne's Documents**

The fact that the relevant documents were generated by Chadbourne's Kiev office and may be located in Kiev does not present any undue burden, since documents housed in a branch office located abroad can easily be electronically accessed from the firm's New York headquarters[8] or shipped to New York if necessary. Gemeinshcaftspraxis, 2006 WL 3844464, at *8 (finding respondent would not be unduly burdened by grant of a discovery request for documents prepared by and located in its German branch office since they could be accessed electronically or sent to respondent's New York headquarters). Such a result is consistent with Chadbourne's statement that it "operates as a single, integrated partnership, rather than a U.S.-based firm with a network of overseas offices." CHADBOURNE & PARKE LLP, http://www.chadbourne.com/firmoverview/ (last visited Mar. 26, 2012).

Moreover, this Court has previously held that the plain language of Section 1782 requires only that the party from whom discovery is sought – and not the documents themselves – be

---

[8]     CHADBOURNE & PARKE LLP, http://www.chadbourne.com/newyork/ (last visited Mar. 26, 2012) ("The New York office serves as the headquarters of Chadbourne & Parke.").

"found" within the ruling court's district. Gemeinshcaftspraxis, 2006 WL 3844464, at *5.[9]  See

also In re Application of Eli Lilly & Co., No. 3:09MC296, 2010 U.S. Dist. LEXIS 59121, at *12-

13 (D. Conn. June 15, 2010) (rejecting the respondent's reliance on Godfrey, following the

analysis and holding of Gemeinshcaftspraxis, and ordering production of the respondent's

agreements located in Canada and China).  Accord Minatec Fin. S.a.r.l. v. SI Group, Inc., Civ.

No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802, at *13 n.8 (N.D.N.Y. Aug. 18, 2008) (stating

that "the only nexus necessary for us to be able to compel production of all documents" is

finding the party from whom discovery is sought within the court's district).

### 3.     **Inapplicability of Privilege to Chadbourne's Responsive Documents**

As demonstrated in Point I.D., U.S. (not Ukrainian) law applies to the issues of the

discoverability of Chadbourne's documents, including whether the attorney-client privilege

shields any of those documents from the Section 1782 request.  Under the law of the Second

Circuit, Chadbourne's communications are discoverable, because the privilege does not attach to

business (as opposed to legal) communications and the crime-fraud exception governs the

communications furthering the fraudulent transactions that are the subject of the Dutch

Litigation.

### a.     **No privilege attaches to business "agent" documents.**

Okean seeks production of documents from Chadbourne regarding a series of related

transactions that formed an unlawful scheme involving the transfer of Wadan Yards Shares and

---

[9]     Nor does the dicta of Judge Jed Rakoff in In re Application of Godfrey, 526 F. Supp. 2d
417 (S.D.N.Y. 2007) alter this conclusion.  While Judge Rakoff denied the Section 1782
application in Godfrey, he did so because the investment firm and bank from whom discovery
was sought were not found within the district.  Neither respondent was incorporated or
headquartered in this district, and there was no allegation that either respondent engaged in
systematic or continuous activities in the district.  Id. at 422-24.  The circumstances concerning
Chadbourne are unquestionably different, rendering Godfrey inapposite.

DOCSNY-497896v1

the assignment of the Loans receivables owed to Okean. Several Chadbourne lawyers were designated as the "agents" under broad Power of Attorney instruments executed by Poizanter and Fradomna whereby "the following [four] lawyers of Chadbourne & Parke LLP" were granted "the power and authority" to do a multitude of acts, including "to enter into, sign and execute *any agreements* on behalf of the Principal, including, but not limited [sic], . . . loan agreements, assignment facility agreements to provide funds to the Company and *any other agreements* at agent's discretion." Skakel Decl. Exs. D-E (emphasis added).

In addition, the Power of Attorney specifically referenced the very transactions at issue in the Dutch Litigation. The Chadbourne lawyers, as agents for Poizanter and Fradomna, had the power and authority to do the following:

> to enter into, amend, terminate, sign and execute on behalf and for the interests of the Principal the mortgage agreement and pledge agreement (Principal acting as a mortgagee/pledgee) with Open Joint Stock Company "Wadan Yards Okean" (identification code 14307653) on the terms at the agents' discretion, as well as signing any other security documents, submit any documents, sign applications, receive extracts necessary for the registration of the respective encumbrances with appropriate Ukrainian registers, including but not limited to the Unified Register of Prohibitions to Alienate Real Estate, State Register of Encumbrances over Movable Property, State Register of Mortgages, etc.;
>
> to enter into, amend, terminate, sign and execute on behalf and for the interests of the Principal the Deeds of Assignment and Amendment to Term Loan Facility No. 1, 4 and 5 by and among Blakur Company Inc. as the original lender, Open Joint Stock Company "Wadan Yards Okean" as the borrower, and the Principal as the new lender, on the terms at the agents' discretion;
>
> to prepare, sign, amend, execute, file, submit to and receive from the appropriate governmental authorities and any other organizations or institutions any and all documents and information in connection with and for the purposes of any of the actions described above.

Id.; see also Skakel Decl. Exs. F-G.

18

And, given the several transactional documents on which the claims in the Dutch Litigation are based in part, it is clear that at least three of the four Chadbourne attorneys functioned under these Power of Attorney instruments. Skakel Decl. Exs. H-M. Thus, these Chadbourne "agents" participated in and furthered their "Principal's" wrongful business scheme. When an attorney acts as a business agent for a client, the attorney's actions in that regard are subject to discovery. See Avery v. Lee, 117 A.D. 244 (1st Dep't 1907) (holding that the attorney-client privilege did not obtain when defendants' attorney negotiated and contracted a sale agreement as their power of attorney because he acted as their business agent rather than in his professional capacity); Comercio e Industria Continental, S.A. v. Dresser Indus., Inc., 19 F.R.D. 265, 267 (S.D.N.Y. 1956) (ruling that plaintiff's attorney could be examined at trial since he acted as plaintiff's general business agent in the transaction that gave rise to the suit so the privilege of professional secrecy would not apply to his business transactions); Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 379 (1991) ("[T]he attorney-client privilege [should] not be used as a device to shield discoverable information. . . . [A] lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer.").

As such, any communications of the Chadbourne attorneys functioning as business agents with respect to those transactions that are the subject of this Section 1782 application are fully discoverable and are not protected under the attorney-client privilege.

### b. No privilege for documents subject to the crime-fraud exception.

Furthermore, the relevant Chadbourne documents are the proper subject of a Section 1782 subpoena because a reasonable basis exists that the transactions in question were fraudulent and that the transactional documents (and related communications) in which the Chadbourne

lawyers were involved were in furtherance of those fraudulent transactions.  Therefore, even if some of the communications in question would otherwise be protected by the attorney-client privilege, those communications fall squarely within the crime-fraud exception and should be produced in connection with this Section 1782 discovery request.

The courts have recognized a crime-fraud exception to the attorney-client privilege for those communications between client and counsel that are in furtherance of contemplated or ongoing criminal or fraudulent conduct. United States v. Zolin, 491 U.S. 554, 563 (1989) ("It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." (citations omitted) (internal quotation marks omitted)); United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) ("The crime-fraud exception removes the privilege from those attorney-client communications that are relate[d] to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." (alteration in original) (citations omitted) (internal quotation marks omitted)).

The Second Circuit has explained that the controlling question is whether the communications at issue were undertaken to facilitate or conceal the commission of a crime or fraud.  See United States v. Richard Roe, Inc., 168 F.3d 69, 70 (2d Cir. 1999) (quoting United States v. Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995)); Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 242 F.R.D. 248, 250 (S.D.N.Y. 2007) (holding that an email seeking counsel's assistance to procure fraudulent corporate documents "fit[] squarely within the crime-fraud exception" even though it was not evidence of the same fraud alleged by plaintiff in its complaint).

The pertinent intent is that of the client, not the attorney.  See, e.g., Clark v. United States, 289 U.S. 1, 15 (1933) (holding that attorney-client privilege can be lost even where "the attorney may be innocent" or without a showing "that client and attorney are involved in equal guilt"); SEC v. Herman, No. 00 CIV 5575, 2004 U.S. Dist. LEXIS 7829, at *23-24 (S.D.N.Y. May 5, 2004) (holding that there was probable cause to believe that the defendants intended at least some of the communications it had with their attorneys, including communications regarding the purposes of a private offering of preferred shares, the drafting of those portions of the offering documents that discussed the purpose of the offering or the intended use of the funds, the arranging for and carrying out of the fund transfers to certain parties, etc., were to further defendants' fraudulent activity and were therefore properly subject to disclosure).  And, while the privilege belongs to the client, it may be pierced by the wrongdoing of the attorney, even without the knowledge or intent of the client.  See United States v. Kaplan, No. 02 Cr. 883, 2003 U.S. Dist. LEXIS 21825, at *18-30 (S.D.N.Y. Dec. 5, 2003) (applying crime-fraud exception where defendant law firm was accused of insurance fraud); United States v. Rivera, 837 F. Supp. 565, 569 (S.D.N.Y. 1993) (applying crime-fraud exception where defendant law firm engaged in immigration fraud, though noting clients were likely aware of the fraud).

To justify invocation of this exception to the privilege, the discovering party bears the burden to demonstrate that there is "probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." Jacobs, 117 F.3d at 87, 88-89 (upholding the district court's finding that the state had shown probable cause by establishing that the defendant had obtained false Mexican identification documents and agreed to host a "debt elimination" seminar before he received his attorney's advice and indeed used his attorney's advice to participate in an illegal scheme in which

unwitting debtors were enticed to purchase "certified drafts" drawn on non-existent financial entities in Mexico). This standard requires that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.[10] See In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir. 1994) (holding that the district court's rulings that the communications at issue were "beyond peradventure . . . communications from an individual seeking to solicit the assistance of the attorney in the commission of a crime" and that "this was not a close question," established that the district court effectively found there was more than a reasonable basis to suspect that the crime-fraud exception was established (alteration in original (internal quotation marks omitted)).

Here, the Chadbourne attorneys' fingerprints are all over the transactions by which the fraudulent scheme was effectuated. Significantly, much of what Chadbourne did to implement the several fraudulent transactions was acting as a business agent for the companies who are named defendants in the Dutch Litigation. The duration and extent of Chadbourne's involvement in the interrelated series of transactions – ranging from the initial Share Sale and Purchase Agreement, to the transfer of the Loans to Poizanter and Fradomna, and (at least) to the later claims in the Wadan Yards bankruptcy – are such that there is more than a reasonable basis to suspect Chadbourne of participating and furthering the fraud of the defendants in the Dutch Litigation. This is especially evident where the relevant fraudulent intent is that of the defendant-client, not the Chadbourne attorney. See Clark v. United States, 289 U.S. at 15. The

---

[10]    Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court. Zolin, 491 U.S. at 572. See Chevron Corp. v. Salazar, 275 F.R.D. 437, 455 (S.D.N.Y. 2011) (directing an attorney to produce certain documents to the district court judge for in camera review so the judge could determine whether they in fact fell under the crime-fraud exception). If and when there has been an in camera review, the district court exercises its discretion again to determine whether the facts are such that the exception applies. These factual determinations are governed by the clearly erroneous standard. Jacobs, 117 F.3d at 87.

DOCSNY-497896v1

fraudulent transactions that are the subject of Okean's claims in the Dutch Litigation are simply too well-orchestrated and the involvement of the Chadbourne attorneys is simply too extensive – resulting in the documents prepared and other acts taken to effectuate those transactions – for Chadbourne's communications not to have facilitated and furthered the defendants' scheme to swindle Okean.

Consequently, because the fourth factor also weighs in favor of Okean's application, Okean's application for Section 1782 discovery satisfies all of the statutory and discretionary requirements and factors, and should be granted.

<u>**Conclusion**</u>

For the foregoing reasons, Okean respectfully requests that this Court grant Okean's application and enter Okean's proposed order directing Chadbourne to produce documents for use in the Dutch Litigation, as set forth in the accompanying subpoena.

Dated: New York, New York
      April 4, 2012

Respectfully submitted,

DICKSTEIN SHAPIRO LLP

By: _____
      Deborah A. Skakel
      1633 Broadway
      New York, New York  10019-6708
      Telephone: (212) 277-6500
      Facsimile: (212) 277-6501
      skakeld@dicksteinshapiro.com

      *Attorneys for Petitioners Okean B.V. and*
      *Logistic Solution International Limited*