UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 MISC 0 0 1 0 4**

| | |
|---|---|
| In re Application Pursuant to 28 U.S.C. § 1782 of OKEAN B.V. and LOGISTIC SOLUTION INTERNATIONAL LIMITED,<br><br>Petitioners,<br><br>— to take discovery of —<br><br>CHADBOURNE & PARKE LLP,<br><br>Respondent. | Case No.<br>ECF Case |



### DECLARATION OF DEBORAH A. SKAKEL PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF APPLICATION FOR ORDER TO CONDUCT DISCOVERY FROM CHADBOURNE & PARKE LLP PURSUANT TO 28 U.S.C. § 1782 FOR USE IN FOREIGN LEGAL PROCEEDINGS

DEBORAH A. SKAKEL declares as follows:

1. I am a partner in the New York office of Dickstein Shapiro LLP, and counsel for Petitioners Okean B.V. and Logistic Solution International Limited ("Logistic") (together, "Okean").

2. I submit this declaration in support of Okean's application pursuant to 28 U.S.C. § 1782 for an order directing that Chadbourne & Parke LLP produce certain documents for use in <u>Okean B.V. and Logistic Solution International Limited v. Olympus Investments (2001) B.V., Poizanter Holdings Ltd., Fradomna Investments Ltd., Blakur Company Inc., Judith Hamburger, and Private Joint Stock Company Smart-Holding</u>, District Court of Amsterdam, the Netherlands (the "Dutch Litigation").

3. I am familiar with the matters addressed in this Declaration based upon my personal knowledge, information provided to me by Okean and/or from a review of the documents I reference below.

4. Petitioner Okean B.V. is a limited liability company registered in the Netherlands at Houtsingel 5, 2919EA Zoetermeer, the Netherlands. Petitioner Logistic Solution International Limited ("Logistic") is a company incorporated under the laws of England and Wales with a registered seat in Road Town, Tortola, British Virgin Islands.

5. Upon information and belief, Respondent Chadbourne & Parke LLP ("Chadbourne") is a New York registered limited liability partnership with its principal place of business in New York, New York. A true and correct copy of the New York State Division of Corporations Entity Information Database webpage reflecting same is attached as Appendix 1.

**The Dutch Litigation**

6. On March 19, 2012, Okean B.V. and Logistic (together "Okean") commenced a proceeding against Olympus Investments (2001) B.V. ("Olympus"), Poizanter Holdings Ltd. ("Poizanter"), Fradomna Investments Ltd. ("Fradomna"), Blakur Company Inc. ("Blakur"), Judith Hamburger ("Hamburger"), and Private Joint Stock Company Smart-Holding ("Smart-Holding") by means of a writ of summons ("Writ") over which the District Court of Amsterdam has jurisdiction. A true and correct copy of the Writ (without its exhibits) is annexed hereto as Exhibit A.

7. The Dutch Litigation is ongoing, and the documents Okean seeks in this application are intended for use in the Dutch Litigation. Attached as Appendix 2 is a draft subpoena setting forth the types of documents which Okean is seeking from Chadbourne.[1]

8. As set forth in detail in the Writ, by means of a series of fraudulent conveyances, Okean was swindled out of stock shares and other valuable assets worth millions of dollars. The fraudulent scheme was effectuated by means of two related and parallel components:

---

[1] For the convenience of the Court, Exhibits A-T to the draft subpoena are annexed hereto as Exhibits A-T, respectively.

(1) the transfer of Okean's 98.74% interest (the "Shares") in the Ukranian shipping company Wadan Yards Okean Open Joint Stock Company ("Wadan Yards") to Blakur Company Inc. ("Blakur") for a sham promissory note; and the successive transfers of the Shares from Blakur to a number of companies, including Olympus Investments (2001) B.V. ("Olympus") and Private Joint-Stock Company Smart-Holding ("Smart-Holding"); and

(2) the assignment of debts owed to Okean (the "Loans") – totaling over EUR 50 million – to Blakur for a mere USD 200; and the successive transfer of the EUR 50 million asset to two Cypriot companies, Poizanter Holdings Limited ("Poizanter") and Fradomna Investments Limited ("Fradomna").

Ex. A ¶ 4, ¶¶ 21-34; ¶ 5, ¶¶ 13-20.

9. The timing and effect of the transfer of the Shares and the assignment of the Loans underscore the interrelatedness and common purpose of the multiple transactions. Blakur was formed just prior to entering into the Share Sale and Purchase Agreement under which it obtained the Shares in return for a sham note. Id. ¶ 4. About a week after obtaining the Shares, Blakur acquired the Loans receivable of almost EUR 50 million for a mere USD 200. Id. Approximately two months after that, Blakur transferred the Loans to Poizanter and Fradomna. Id. The effect of the transfer of the Loans from Okean to Blakur (Exs. F and G), and from Blakur to Poizanter and Fradomna has been to leave Poizanter and Fradomna (who paid no consideration) as the major creditors of Wadan Yards, which is currently undergoing bankruptcy proceedings in Ukraine. Id. ¶ 20. Shortly after the transfer of the receivables to Poizanter and Fradomna, both companies were granted extremely favorable security rights by the management of Wadan Yards; and the decision to grant these rights was taken by Wadan Yard's management a mere three days before the date of transfer. Id.; Ex. S. Although there were various references in the documents to the prospect of each of Blakur, Poizanter and Fradomna providing further financing to Wadan Yard, no such financing was made available – resulting in the Wadan Yards bankruptcy. Ex. A ¶ 20.

10. Equally well-orchestrated were the components of the transactional scheme by which Olympus and Smart-Holding have ended up with Okean's lucrative Shares in Wadan Yards. Incorporated in January 2010, Blakur entered into the sham Share Purchase and Sale Agreement in February 2010, amended that agreement in March 2010 (making payment of any consideration for the Shares even more illusory), transferred that Shares to AELITA in April 2010, and then voluntarily dissolved – having paid (and presumably received) nothing for the Shares. Id. ¶¶ 21-24.

11. From AELITA, the Shares were transferred to five different Panamanian and British Virgin Island Companies; and from those five companies, the Shares went to Olympus. Id. ¶¶ 24-25. In February 2012, according to press reports, Olympus entered into an oral agreement with Smart-Holding to sell 50% of the Shares. Id. ¶ 25. Underscoring the fraudulent nature of these carefully crafted transactions is the Ukrainian Business Report Daily article (Ex. R) in which it is reported that the local authorities were not able to establish who were the actual shareholders (i.e., who owned the Shares), Smart-Holding "had managed to do this." Id. ¶ 25.

12. Okean's claims in the Dutch Litigation are against Blakur, Olympus, Smart-Holding, Poizanter, Fradomna, and Judith Hamburger, the sole director of Blakur ("Hamburger"). Okean has asserted the Dutch equivalent of a fraudulent conveyance claim to set aside the transactions by which the Shares and the Loans were fraudulently transferred to the defendants and a Dutch claim for damages based on the defendant's acquisition of the Shares and the Loans by "gratuitous title" – i.e., not in good faith and in knowing or reckless disregard for the title. Id. ¶¶ 26-45.

**The Role and Relevance of Chadbourne to the Dutch Litigation**

13. Chadbourne was very much a part of the transactions that are the subject of the Dutch Litigation. The involvement of the Chadbourne attorneys takes a variety of forms:

4

- Chadbourne attorneys acted on behalf of both sides of many of the transactions – i.e., on behalf of all of Blakur, Poizanter and Fradomna.

- On the Blakur side of the transactions, several Chadbourne attorneys were designated as proxies by Blakur under two power of attorney instruments dated March 26, and April 8, 2010. Exs. B-C.

- Under the Blakur power of attorney, five Chadbourne attorneys were appointed and authorized by Blakur (acting through Hamburger) to act "on [Blakur's] behalf" to do a number of acts, including entering into the "Pledge Agreement" and "Mortgage Agreement" between Blakur and Wadan Yards – the type of "Security Agreements" that were intended to facilitate the transfer to Blakur of the security rights in the Loan receivables belonging to Okean, which were transferred to Poizanter and Fradomna – as described in the Writ. Ex. A ¶¶ 19-20, Ex. C.

- Four of those same Chadbourne attorneys were designated as business "agents" by Poizanter and Fradomna under very broad power of attorney instruments, dated May 5, and May 3, 2010, respectively. Exs. D-E.

- Under the Poizanter and Fradomna power of attorney instruments, four identified "lawyers of Chadbourne & Parke LLP" were granted "the power and authority" to do a multitude of acts, including "to enter into, sign and execute any agreements on behalf of the Principal, including, but not limited [sic], . . . loan agreements, assignment facility agreements to provide funds to the Company and <u>any other agreements at agent's discretion</u>." Exs. D-E. (emphasis added).

- The Poizanter and Fradomna power of attorney instruments specifically referenced the second transactional link of the fraudulent scheme at issue in the Dutch Litigation. The Chadbourne lawyers, as agents for Poizanter and Fradomna, had the power and authority to do the following:

    > "to enter into, amend, terminate, sign and execute on behalf and for the interests of the Principal the mortgage agreement and pledge agreement (Principal acting as a mortgagee/pledgee) with Open Joint Stock Company 'Wadan Yards Okean' (identification code 14307653) <u>on the terms at the agents' discretion</u>, as well as signing any other security documents, submit any documents, sign applications, receive extracts necessary for the registration of the respective encumbrances with appropriate Ukrainian registers, including but not limited to the Unified Register of Prohibitions to Alienate Real Estate, State Register of Encumbrances over Movable Property, State Register of Mortgages, etc.;
    >
    > to enter into, amend, terminate, sign and execute on behalf and for the interests of the Principal the Deeds of Assignment and

> Amendment to Term Loan Facility No. 1, 4 and 5 by and among Blakur Company Inc. as the original lender, Open Joint Stock Company 'Wadan Yards Okean' as the borrower, and the Principal as the new lender, <u>on the terms at the agents' discretion</u>;
>
> to prepare, sign, amend, execute, file, submit to and receive from the appropriate governmental authorities and any other organizations or institutions any and all documents and information in connection with and for the purposes of any of the actions described above."

Exs. D-E (emphasis added); <u>see also</u> Exs. F-G.

- Given the several transactional documents on which the claims in the Dutch Litigation are based in part, it is clear that at least three of the four Chadbourne attorneys functioned under these power of attorney instruments, including by executing at least six of the transactional documents that are the subject of the Writ in the Dutch Litigation. Exs. H-M.

- One of the Chadbourne attorneys appointed under the Blakur April 2010 power of attorney instrument also executed the claims of Poizanter and Fradomna in the Wadan Yards bankruptcy. Likewise, the claim of Olympus in the Wadan Yards bankruptcy, which was signed by Olympus's sole director, lists Chadbourne's office address for Olympus, indicating that Chadbourne is acting on behalf of yet another company that participated in the fraudulent scheme with respect to yet another transactional step of that improper scheme. Exs. O-Q.

- Many of the transactional documents contain the recognizable Chadbourne "footer" – the distinctive word processing reference on the bottom left hand corner of several of the documents Chadbourne drafted, including all of the power of attorney instruments as well as the Share Sale and Purchase Agreement, dated February 26, 2010 (under which Blakur obtained the Shares – but paid nothing) and the multiple Pledge Agreements. Another of these Chadbourne-prepared documents is a March 31, 2010 letter indicating that Chadbourne was coordinating the improper transfers of the Loans among Okean B.V., Blakur and Wadan Yards. Exs. B-E, K-N, T.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 4, 2012

*/s/ Deborah A. Skakel*
Deborah A. Skakel

6

DOCSNY-497935v1