14

30. Should it nonetheless be assumed that the Purchase Price is a real purchase price and the sale of the Shares on the grounds of the SPA is not a legal act by gratuitous title, this does not detract from the fraudulent nature of the transfer of the shares. The requirements of Section 3:45 Dutch Civil Code for annulling a legal act that is not a legal act by gratuitous title have also been satisfied, because the transaction resulted in the Shares leaving Okean's assets without any real consideration. The Shares were worth considerably more than the purchase price of EUR 5,000,000 and the transaction took place without any real valuation of the Shares. Okean was aware of this, no doubt, and also Blakur, as counterparty in the transaction, knew, or rather, should have known that the sale of the Shares would prejudice the creditors of Okean.

31. The question of whether the sale and transfer of the Shares can be annulled as a result of this being prejudicial to the creditors of Okean is governed by Dutch law, as Okean is a Dutch legal entity whose centre of main interests is located in the Netherlands.

32. **Logistic therefore hereby annuls** the *Share Sale and Purchase Agreement no. 114 B/10* (exhibit 2) on the basis of Section 3:45 of the Dutch Civil Code or rather, in as much as the question regarding the fraudulent conveyance should be assessed, for violation of the provisions protecting creditors in accordance with that foreign law. Okean acknowledges this annulment.



33. As a result of the annulment on the basis of Section 3:45 of the Dutch Civil Code, the Shares were not transferred validly to Blakur and the Shares remained part of the assets Okean.

34. Olympus will have acquired the shares by gratuitous title and, in as much as this is not the case, it is not in good faith, as an investigation of title, which it could have reasonably been expected to perform, would have demonstrated that the sale to Blakur was fraudulent. Insofar as Smart-Holding has acquired or will acquire 50% of the Shares, it is, in line with Olympus, not in good faith.

*The assignment deeds are fraudulent*

35. The assignments of 2 March 2010 prejudice the creditors of Okean and Wadan Yards AS in particular, which means they can be annulled on the basis of Section 3:45 of the Dutch Civil Code.

36. The rights of Okean under the Loans were transferred to Blakur for the symbolic price of USD 100 for each loan. The credit provided under the Loans amounts to no less than EUR 2,029,784.44 and EUR 41,931,314. The total purchase price is not at all proportionate to the current value of the loans in question, partly in light of the possibility enshrined in the assignment deeds of having sureties established to the benefit of Blakur. In fact, the assignments are legal acts by gratuitous title, where the fact that Okean, as a result of the transactions, became de facto insolvent, or rather its insolvency became worse, already demonstrates that the creditors of Okean were prejudiced by these transactions.

37. There is no relationship between the Loans and the SPA, or rather no relationship between the transactions can be inferred from the credit documentation. The Loans were transferred with the intention that both Blakur and its legal successors Poizanter and Fradomna would provide additional credit to Wadan Yards (see nos. 16). However, Wadan Yards has not received any additional credit and this can also never have been parties true intention. This again shows the fraudulent and wrongful nature of the transfer of the Loans. The receiver of Wadan Yards AS has called the assignment deeds part of a conspiracy to extract substantial assets from the bankrupt estate (see no. 12).

38. If, contrary to what is stated above, it may be assumed that the assignment deeds are not a legal act by gratuitous title, this does not affect the fraudulent nature of the transfer of the Loans. The requirements of Section 3:45 Dutch Civil Code to annul a legal act that is not a legal act by gratuitous title have also been met, where, with regard to Blakur's knowledge, reference can be made to no. 30.

39. **Logistic therefore hereby annuls:** *(i) Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 4* between Okean and Blakur (exhibit 11) and (ii) *Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 5* between Okean and Blakur (exhibit 12), both separately and jointly, on the basis of Section 3:45 of the Dutch Civil Code or rather, in as much as the question regarding the fraudulent conveyance should be assessed under

16

foreign law, for violation of the provisions protecting creditors in accordance with that foreign law. Okean acknowledges this annulment.

40. The rights obtained by Poizanter and Fradomna need no longer be honoured on the grounds of Section 3:45 (5) of the Dutch Civil Code, as they did not acquire the Loans, or rather they did not acquire them in good faith. Poizanter and Fradomna also only paid a symbolic purchase price, as a result of which they knew, or ought to have known, that Okean's creditors had been prejudiced. Moreover, it is shown in no. 20 that Poizanter and Fradomna most definitely benefit as a result of the legal acts.

41. As a result, the rights under the Loans were not transferred validly to Blakur and the rights under the Loans remained in the assets of Okean.

*Unlawful act*

42. The series of actions described above of Hamburger, Olympus, Poizanter Fradomna, and Smart-Holding are unlawful vis-à-vis Okean, as well as vis-à-vis the creditors of Okean and Wadan Yards AS. Setting aside part of the legal acts objected to does not stand in the way of filing a claim on the basis of an unlawful act. Insofar as the legal acts performed were fraudulent, their unlawful nature is established.

43. The two most important persons who were, in fact, pulling the strings in the transactions going from Okean to Blakur and from Blakur to the different third parties are Shaposhnikov, director of Okean at the time of the transactions and Chairman of the SB of Wadan Yards and Hamburger, sole director of Blakur. Shaposhnikov and Hamburger, in collaboration with the other defendants, attempted to channel the most important possessions out of Okean's assets.

44. Okean's parent company, Wadan Yards AS, was already in financial difficulties at the time of the transactions. However, at the time when the transactions took place, it was attempting to improve its financial position and to prevent a bankruptcy. The transactions have caused this to become de facto impossible and the creditors of Wadan Yards AS have also been prejudiced. The resulting loss of the Shares and the Loans led to the bankruptcy of Wadan Yards AS. The actions of Hamburger Olympus, Poizanter, Fradomna and Smart-Holding are therefore equally unlawful vis-à-vis the creditors of the parent company of Wadan Yards AS.

45. With regard to the unlawful act claim, Okean and Logistic request that it be referred to proceedings for quantifying the damage. The legally required plausibility of the possibility of damage and causal link follow from the above. If the fraudulent conveyance claims are successful, the damage consists of the value impairment of the Shares and Loans, as already occurred. Insofar as the fraudulent conveyance claims are unsuccessful, the damage consists of the value of the Shares and Loans, at the time of the disputed transactions. Establishing this value will require a further investigation into the realistic value of these assets at either of these two record dates.

**Known defences**

46. No defence against this claim has been advanced by Olympus, Fradomna, Poizanter, Blakur, Hamburger and Smart-Holding in the phase leading up to this writ of summons. Consequently, in this writ of summons Okean and Logistic are unable to already respond, in accordance with Section 111(3) of the Dutch Code of Civil Procedure, to any possible defence, nor indicate which evidence they have to substantiate any grounds that might be disputed.

**Jurisdiction**

47. The District Court of Amsterdam has jurisdiction on the grounds of Article 2(1) of the Brussels I Regulation (defendant's domicile) to treat the claim of Okean and Logistic, as Olympus has its registered seat and, consequently, its domicile in Amsterdam, whereas, with regard to the other Defendants, the above demonstrates that there is a connection in the sense of Article 6(1) of the Brussels I Regulation and article 6(1) of the EVEX Convention.

48. Moreover, the District Court of Amsterdam also has jurisdiction and is competent to rule in this dispute on the basis of Article 5(3) of the Brussels I Regulation and article 5(3) of the EVEX Convention, as the location where the harmful event occurred (*Erfolgsort*) is situated in the Netherlands.

**Exhibits, obligation to furnish evidence and offer to furnish evidence**

18

49. To substantiate their assertions, Okean and Logistic will submit the exhibits mentioned in this writ of summons, preceded by an overview, on the first hearing day.

50. In addition to the exhibits mentioned above, Okean and Logistic offer, without wishing to take on any involuntary burden of proof, to prove all its assertions, insofar as soundly disputed, by all legal means.

51. Okean and Logistic also already now offer to provide evidence to the contrary by all legal means, in particular by the hearing of witnesses, against assertions by the defendants, insofar as (i) the District Court at any time in the proceedings considers such assertions proven in principle and (ii) Okean and/or Logistic disputes these assertions. Okean and Logistic point out that the specificity requirement does not apply for providing evidence to the contrary.[1]

**Costs**

52. Okean and Logistic are claiming for the costs of these proceedings (partly under the condition of Section 3:296(2) of the Dutch Civil Code) as well as the subsequent costs in line with the scale of fees applied by the District Courts and Courts of Appeal (€ 131, without service costs and € 199, with service costs[2]).



53. Pursuant to the aforementioned EU Service Regulation (Article 5 in conjunction with Article 8), respectively Article 7 in conjunction with Article 11 of the Convention, this writ of summons will need to be translated into Greek, respectively German, respectively Ukrainian and will need to be served in Cyprus, respectively Switzerland, respectively the Ukraine by the competent judicial officer/agency to Fradomna, respectively Poizanter, respectively Hamburger, respectively Smart-Holding this judicial officer/agency will need to notify Fradomna, Poizanter, Hamburger and Smart-Holding hereof, and accordingly Okean and Logistic are also entitled to and have an interest in getting the related costs, for which, by means of a deed, a copy of the translators' invoices and, if applicable, of the receipt for the service costs abroad (**exhibit 24**)

---

[1] See Section 151(2) Dutch Code of Civil Procedure and Netherlands Supreme Court 9 January 1998, NJ 1999, 413, with annotation by HJS and repeated in NL Supr. Ct. 29 April 2011, LJN BP9860.

[2] See Netherlands Supreme Court 10 December 2010 (LJN BO6879) and Netherlands Supreme Court 21 May 2010 (LJN BL5447).

will be submitted in the proceedings, reimbursed by Fradomna, respectively Poizanter, respectively Hamburger, respectively Smart-Holding.

**Therefore**

On the grounds set forth above, that it may please the court, insofar as possible by provisionally enforceable judgment:

(i) to rule that the Share Sale and Purchase Agreement of 26 February 2010, the Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 4 of 2 March 2010 and the Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 5 of 2 March 2010 are void and that no transfer between Okean and Blakur of the Shares and Loans occurred and that Okean remained the party holding title to the Shares and the claims under the Loans;

(ii) to jointly and severally order defendants 1, 2, 3, 5 and 6, Olympus, Poizanter, Fradomna, Hamburger and Smart-Holding, to pay damages for an unlawful act committed vis-à-vis the joint creditors of Okean and Wadan Yards AS, as to be quantified by the court and settled in accordance with the law, this including statutory interest;

(iii) to jointly and severally order defendants 1, 2, 3, 5 and 6, Olympus, Poizanter, Fradomna, Hamburger and Smart-Holding to pay the costs of the proceedings, plus the statutory interest starting from 14 days, or rather any other period deemed fair by the District Court, after the judgment to be pronounced in this action, if and to the extent that the defendants have not already reimbursed those costs;



(iv) to order Poizanter, Fradomna, Hamburger and Smart-Holding respectively to pay the costs incurred in connection with the Greek, respectively German respectively Ukrainian, translations of this writ of summons and the service/presentation of this writ of summons in Cyprus, respectively Switzerland, respectively the Ukraine as described above at 53, this plus the statutory interest starting from 14 days, or rather any other period deemed fair by the District Court, after the judgment to be pronounced in this action, if and to the extent that Poizanter, Fradomna, Hamburger and Smart-Holding respectively have not already reimbursed those costs;

20

(v) to jointly and severally order defendants 1, 2, 3, 5 and 6, Olympus, Poizanter, Fradomna, Hamburger and Smart-Holding to pay the subsequent costs, for the amount of, respectively, € 131 without service costs and € 199 with service costs, plus the statutory interest if and to the extent that Defendants do not pay within (the statutorily required period of) two days, or rather any other period deemed fair by the District Court, after the judgment to be pronounced in this action.

The costs of this writ amount to, including Dutch VAT, EUR:

NOTE: the costs related to the writ are subject to Dutch VAT, as Logistic has expressly declared that its turnover tax cannot be offset in the sense of the Dutch Turnover Tax Act of 1968.

The undersigned hereby states that the above disbursements were made for the proper execution of official acts and that these acts were necessary and that the undersigned has no direct or financial interest in the company or third party invoicing the above disbursements.

Bailiff



This case is being handled by. R.J. van Galen, NautaDutilh N.V., Strawinskylaan 1999 (1077XV) Amsterdam, T 020-71 71 677, F 020-7171 347, E robert.vangalen@nautadutilh.com. Matter number: 50088245.

All notices related to cause list cases should be addressed to:
Bureau Proceskwaliteit NautaDutilh N.V., Postbus 7113, 1007 JC Amsterdam,
T 020-71 71 788/790/836, F 020-71 71 392, E bureauproceskwaliteit@nautadutilh.com

**DAGVAARDING**

Vandaag, de negentiende maart tweeduizend twaalf,

heb ik,

op verzoek van

I.  de besloten vennootschap met beperkte aansprakelijkheid **OKEAN B.V.** ("**Okean**"), statutair gevestigd te Gorinchem.

II. de vennootschap naar vreemd recht **LOGISTIC SOLUTION INTERNATIONAL LIMITED** ("**Logistic**"), statutair gevestigd te Road Town, Tortola, de Britse Maagdeneilanden

dit exploot van dagvaarding uitgebracht.

Okean en Logistic kiezen voor deze zaak woonplaats te (1077 XV) Amsterdam aan het adres Strawinskylaan 1999 ten kantore van NautaDutilh N.V., advocaten, notarissen en belastingadviseurs, alwaar de zaak wordt behandeld door mr. R.J. van Galen, die door Okean en Logistic tot advocaat wordt gesteld.

Deze dagvaarding is bestemd voor:

I.  de besloten vennootschap met beperkte aansprakelijkheid **OLYMPUS INVESTMENTS (2001) B.V.** ("**Olympus**"), gevestigd te Amsterdam en kantoorhoudende te (6222 PH) Maastricht aan het adres Kruisdonk 66.

Daartoe heb ik aan het hiervoor vermelde adres mijn exploot gedaan en aldus daar een afschrift daarvan gelaten aan:

aan wie een afschrift bij afzonderlijk exploot is of zal worden betekend.



II. de vennootschap naar vreemd recht **POIZANTER HOLDINGS LIMITED** ("**Poizanter**"), statutair gevestigd, althans kantoorhoudende te (P.C. 3095) Limassol, Cyprus, aan het adres Kimonos 43A, zonder bekende plaats van vestiging of bekend kantooradres in Nederland.

2

Daartoe heb ik uit kracht van artikel 56 Rv. en in mijn hoedanigheid van verzendende instantie als bedoeld in EG-verordening nr 1393/2007 van het Europees Parlement en de Raad van 13 november 2007 (EU Betekeningsverordening) twee afschriften hiervan verzonden aan de ontvangende instantie te Cyprus te weten:

Υπουργείο Δικαιοσύνης και Δημοσίας Τάξεως
(Ministry of Justice and Public Order)
Λεωφόρος Αθαλάσσας (Athalassa Avenue 125)
1461 Λευκωσία Lefkosia (Nicosia)
Cyprus

Deze verzending heeft plaatsgevonden per <u>aangetekende post met bericht van ontvangst</u> en is vergezeld van:

- twee vertalingen van dit exploot in de Griekse taal; en
- het formulier als bedoeld in art. 4, derde lid van eerder genoemde EU Betekeningsverordening, ingevuld in de Engelse taal.

Daarbij heb ik de ontvangende instantie verzocht deze dagvaarding met vertaling aan Poizanter te betekenen / daarvan aan haar kennis te geven op de wijze als onder 5.1 in het formulier "aanvraag om betekening en kennisgeving van stukken" omschreven, te weten betekening volgens de wet van de aangezochte Staat.

III. de vennootschap naar vreemd recht **FRADOMNA INVESTMENTS LIMITED** ("**Fradomna**"), statutair gevestigd, althans kantoorhoudende te Nicosia, Cyprus, aan het adres Apostolu Varnava, 2, Centaur Haus Nicy 2571 zonder bekende plaats van vestiging of bekend kantooradres in Nederland.



Daartoe heb ik uit kracht van artikel 56 Rv. en in mijn hoedanigheid van verzendende instantie als bedoeld in EG-verordening nr 1393/2007 van het Europees Parlement en de Raad van 13 november 2007 (EU Betekeningsverordening) twee afschriften hiervan verzonden aan de ontvangende instantie te Cyprus te weten:

Υπουργείο Δικαιοσύνης και Δημοσίας Τάξεως
(Ministry of Justice and Public Order)
Λεωφόρος Αθαλάσσας (Athalassa Avenue 125)
1461 Λευκωσία Lefkosia (Nicosia)
Cyprus

Deze verzending heeft plaatsgevonden per <u>aangetekende post met bericht van ontvangst</u> en is vergezeld van:

- twee vertalingen van dit exploot in de Griekse taal; en

50088245 M 7250659 / 5

3

— het formulier als bedoeld in art. 4, derde lid van eerder genoemde EU Betekeningsverordening, ingevuld in de Engelse taal.

Daarbij heb ik de ontvangende instantie verzocht deze dagvaarding met vertaling aan Fradomna te betekenen / daarvan aan haar kennis te geven op de wijze als onder 5.1 in het formulier "aanvraag om betekening en kennisgeving van stukken" omschreven, te weten betekening volgens de wet van de aangezochte Staat.

IV.  de vennootschap naar vreemd recht **BLAKUR COMPANY INC.** ("**Blakur**"), statutair gevestigd, althans kantoorhoudende te Road Town, Tortola, de Britse Maagdeneilanden, aan het adres Pasea Estate, zonder bekende plaats van vestiging of bekend kantooradres in Nederland.

Daartoe heb ik mijn exploot gedaan aan het parket van de Ambtenaar van het Openbaar Ministerie bij de Rechtbank Amsterdam en aldus aldaar aan het adres Parnassusweg 220 te Amsterdam twee afschriften hiervan gelaten aan:

aan wie een afschrift bij afzonderlijk exploot is of zal worden betekend.

aldaar werkzaam,

aan wie ik tevens heb overhandigd twee vertalingen in de Engelse taal van dit exploot.

Verzocht wordt daarbij het exploot en de daarbij behorende Engelse vertaling aan Blakur te doen betekenen / daarvan aan haar kennis te doen geven overeenkomstig de artt. 3 tot en met 6 van het Verdrag inzake de betekening en kennisgeving in het buitenland van gerechtelijke en buitengerechtelijke stukken in burgerlijke- en handelszaken van 15 november 1965 (het "Verdrag"), <u>door betekening of kennisgeving met inachtneming van de vormen in de wetgeving van de Britse Maagdeneilanden</u> voorgeschreven voor de betekening of de kennisgeving van stukken, die in dat land zijn opgemaakt en bestemd zijn voor zich aldaar bevindende personen, in beide gevallen onder afgifte van een bewijs van ontvangst.



Voorts wordt een afschrift van deze dagvaarding en de Engelse vertaling daarvan onverwijld door mij <u>per koerier met bericht van ontvangst</u> aan Blakur op haar hiervoor genoemde adres toegezonden.

V.  **JUDITH HAMBURGER** ("**Hamburger**"), wonende te (8002) Zurich, Zwitserland aan het adres Kappelistrasse 6, zonder bekende woonplaats of bekend verblijf in Nederland.