4

Daartoe heb ik mijn exploot gedaan aan het parket van de Ambtenaar van het Openbaar Ministerie bij de Rechtbank Amsterdam en aldus aldaar aan het adres Parnassusweg 220 te Amsterdam twee afschriften hiervan gelaten aan:

aan wie een afschrift bij afzonderlijk exploot is of zal worden betekend.

aldaar werkzaam,

aan wie ik tevens heb overhandigd twee vertalingen in de Duitse taal van dit exploot.

Daarbij wordt verzocht het exploot en de daarbij behorende Duitse vertaling aan Hamburger te doen betekenen / daarvan aan haar kennis te doen geven overeenkomstig de artt. 3 tot en met 6 van het Verdrag, door betekening of kennisgeving met inachtneming van de vormen in de wetgeving van Zwitserland voorgeschreven voor de betekening of de kennisgeving van stukken, die in dat land zijn opgemaakt en bestemd zijn voor zich aldaar bevindende personen, in beide gevallen onder afgifte van een bewijs van ontvangst.

Voorts wordt een afschrift van deze dagvaarding en de Duitse vertaling daarvan onverwijld door mij per koerier met bericht van ontvangst aan Hamburger op haar hiervoor genoemde adres toegezonden.

VI. de vennootschap naar vreemd recht **CLOSED JOINT STOCK COMPANY SMART-HOLDING** ("Smart-Holding"), statutair gevestigd, althans kantoorhoudende te (04070) Kiev, Oekraïne aan het adres Igorivska Street 7-a, zonder bekende plaats van vestiging of bekend kantooradres in Nederland.

Daartoe heb ik mijn exploot gedaan aan het parket van de Ambtenaar van het Openbaar Ministerie bij de Rechtbank Amsterdam en aldus aldaar aan het adres Parnassusweg 220 te Amsterdam twee afschriften hiervan gelaten aan:

aan wie een afschrift bij afzonderlijk exploot is of zal worden betekend.



aldaar werkzaam,

aan wie ik tevens heb overhandigd twee vertalingen in de Oekraïense taal van dit exploot.

Verzocht wordt daarbij het exploot en de daarbij behorende Oekraïense vertaling aan Smart-Holding te doen betekenen / daarvan aan haar kennis te doen geven overeenkomstig de artt. 3 tot en met 6 van het Verdrag, door betekening of kennisgeving met inachtneming van de vormen in de wetgeving van Oekraïne voor-

50088245 M 7250659 / 5

5

geschreven voor de betekening of de kennisgeving van stukken, die in dat land zijn opgemaakt en bestemd zijn voor zich aldaar bevindende personen, in beide gevallen onder afgifte van een bewijs van ontvangst.

Voorts wordt een afschrift van deze dagvaarding en de Oekraïense vertaling daarvan onverwijld door mij <u>per koerier met bericht van ontvangst</u> aan Smart-Holding op haar hiervoor genoemde adres toegezonden.

**Roldatum**

Gedaagden worden hierbij gedagvaard om op woensdag zesentwintig september tweeduizend twaalf niet in persoon maar vertegenwoordigd door een advocaat, te verschijnen in het met deze dagvaarding aanhangig gemaakte geding, te voeren bij de Rechtbank Amsterdam, enkelvoudige kamer van de sector civiel (team handelszaken), aan de Parnassusweg 220 te Amsterdam teneinde te antwoorden op de in deze dagvaarding vervatte eis en de gronden daarvan.

**Daarbij heb ik gedaagden het volgende aangezegd:**

a.  Indien een gedaagde verzuimt advocaat te stellen of het hierna te noemen griffierecht niet tijdig voldoet, en de voorgeschreven termijnen en formaliteiten in acht zijn genomen, verleent de rechter verstek tegen die gedaagde en wijst hij de hierna omschreven vordering toe, tenzij deze de rechter onrechtmatig of ongegrond voorkomt.

b.  Indien ten minste één van gedaagden advocaat heeft gesteld en het griffierecht tijdig heeft betaald, wordt tussen alle partijen één vonnis gewezen, dat als een vonnis op tegenspraak wordt beschouwd.



c.  Bij verschijning in het geding wordt van Olympus, Fradomna, Poizanter, Blakur en Smart-Holding een griffierecht geheven van telkens EUR 575,00 en van Hamburger wordt een griffierecht geheven van EUR 267,00.

d.  Van een persoon die onvermogend is, wordt een lager griffierecht geheven, namelijk van EUR 73,00, indien hij op het tijdstip waarop het griffierecht wordt geheven heeft overgelegd:

1.  een afschrift van het besluit tot toevoeging, bedoeld in artikel 29 van de Wet op de rechtsbijstand, of indien dit niet mogelijk is ten gevolge van omstandigheden die redelijkerwijs niet aan hem

50088245 M 7250659 / 5

|      |      |
|------|------|
| 2.   | zijn toe te rekenen, een afschrift van de aanvraag, bedoeld in artikel 24, tweede lid, van de Wet op de rechtsbijstand, dan wel een verklaring van de raad als bedoeld in artikel 1, onder b, van die wet, waaruit blijkt dat zijn inkomen niet meer bedraagt dan de bedragen, bedoeld in artikel 35, derde en vierde lid, telkens onderdelen a tot en met d dan wel in die artikelleden, telkens onderdeel e, van die wet, met dien verstande dat ten gevolge van een inmiddels van kracht geworden wijziging van de Wet op de rechtsbijstand nu geldt dat de verklaring wordt verstrekt door het bestuur van de raad voor rechtsbijstand, bedoeld in artikel 2 van die wet, terwijl de bedragen waaraan het inkomen wordt getoetst zijn vermeld in artikel 2, eerste en tweede lid, van het Besluit eigen bijdrage rechtsbijstand. |
| e.   | Van de gedaagden die bij dezelfde advocaat verschijnen en gelijkluidende conclusies nemen, wordt op basis van artikel 15 van de Wet griffierechten burgerlijke zaken slechts eenmaal een gezamenlijk griffierecht geheven. |



**De gronden van de eis**

*Inleiding*

1. Voor 6 oktober 2010 hield de Noorse vennootschap Wadan Yards Group AS (**"Wadan Yards AS"**) alle aandelen in Okean. Wadan Yards AS is op 16 maart 2010 door de Rechtbank Oslo failliet verklaard. Johan Ratvik van DLA Piper Norway DA is aangesteld als curator. De curator van Wadan Yards AS heeft vervolgens op 6 oktober 2010 de aandelen in Okean overgedragen aan Link Business Solutions Limited (**"Link"**).

2. De curator van Wadan Yards AS heeft op 7 maart 2012 de rechten die voortvloeien uit verschillende kredietovereenkomsten tussen Wadan Yards AS en Okean, waardoor Okean onder meer in de gelegenheid werd gesteld financiering te verschaffen aan Wadan Yards, in samenhang met alle rechten die betrekking hebben op het hierna nog te beschrijven paulianeuse en onrechtmatige handelen van onder meer gedaagden overgedragen aan Logistic (**productie 1**). Uiteindelijk is eenzelfde partij economisch gerechtigd tot de aandelen van zowel Link als Logistic. Logistic heeft in het kader van deze kredietovereenkomsten een vordering van EUR 53.320.735, exclusief rente op Okean.

3. Okean hield op haar beurt 98,74% van de aandelen in de Oekraïense vennootschap Wadan Yards Okean Open Joint Stock Company (**"Wadan Yards"**). Wadan Yards voornaamste actief is een scheepswerf in Oekraine.

4. Op 26 februari 2010, slechts enkele weken voor het faillissement van haar enig aandeelhouder Wadan Yards AS, heeft Okean op grond van een Share Sale and Purchase Agreement haar aandelen in Wadan Yards (de **"Aandelen"**) verkocht en overgedragen aan Blakur voor de koopprijs van EUR 5.000.000 (de **"Koopprijs"**) (**productie 2**, de **"SPA"**). Blakur was enkele weken hiervoor, op 21 januari 2010 opgericht. Zoals hierna nog zal worden besproken bepaalde de SPA dat Blakur de Koopprijs pas later behoefde te voldoen en werd geen zekerheid van de betaling van die Koopprijs bedongen. Blakur heeft de Koopprijs tot op heden niet voldaan. Naar alle waarschijnlijkheid heeft Blakur de Aandelen vervolgens overgedragen aan Trade House AELITA Limited (**"AELITA"**). AELITA heeft de Aandelen daarna doorgeleverd aan een vijftal vennootschappen, welke uiteindelijk de Aandelen hebben overgedragen aan Olympus. Mogelijk heeft Olympus zeer recentelijk 50% van de Aandelen overgedragen



8

aan Smart-Holding. Voor zover de details van deze transacties bekend zijn, worden zij in nrs. 21 e.v. uiteengezet.

5. Op 2 maart 2010 heeft Okean vervolgens haar twee vorderingen op Wadan Yards eveneens overgedragen aan Blakur, elk voor de symbolische koopprijs van USD 100,-. De vorderingen vloeien voort uit twee leningsovereenkomsten en blijken onder meer uit de *"Term Loan Facility Agreement No. 4"* (**productie 3**) en de *"Term Loan Facility Agreement No. 5"* (**productie 4**, hierna gezamenlijk aangeduid als de "**Leningen**"). Op 14 mei 2010 heeft Blakur ook deze vorderingen overgedragen aan derden, namelijk Poizanter en Fradomna, zie verder nr. 13 t/m 18.

6. Op 16 maart 2010 ging Wadan Yards AS failliet.

7. Blakur is op 30 maart 2011 op verzoek van haar enig bestuurder Hamburger vrijwillig ontbonden (**productie 5**). Nadat Link in zijn hoedanigheid van aandeelhouder van Okean het bestuur van Okean had vervangen heeft Okean echter de Rechtbank op de Britse Maagdeneilanden verzocht de ontbinding van Blakur ongedaan te maken en het faillissement van Blakur uit te spreken. Aldus is op 28 november 2011 Russell Crumpler van KPMG als curator benoemd.



8. De SPA is voor Blakur ondertekend door Hamburger en voor Okean door PJSC ING Bank Ukraine, handelend op grond van een volmacht vervat in een Agency Agreement van 26 februari 2010 (**productie 6**). De Agency Agreement is ondertekend door de bestuurder van Okean Igor Shaposhnikov ("**Shaposhnikov**"). In de cessie-akten van 2 maart 2010 wordt Okean eveneens vertegenwoordigd door Shaposhnikov en Blakur opnieuw door Hamburger. Daarnaast zijn de cessies ondertekend door Mykola Pavlovych Romanchuk ("**Romanchuk**") namens Wadan Yards, gezien de vereiste toestemming van Wadan Yards om de rechten onder de Leningen over te dragen aan derden.

9. Ten tijde van de voornoemde transacties was Shaposhnikov ook voorzitter van de Raad van Commissarissen ("**RvC**") van Wadan Yards. Uit de notulen van de vergadering van de RvC van 11 mei 2010 blijkt dat Shaposhnikov in zijn hoedanigheid van voorzitter van de RvC aan de RvC het besluit heeft voorgelegd toestemming te geven aan de algemeen directeur van Wadan Yards, Romanchuk, om instemming te verlenen voor de overdracht van de Leningen van Blakur aan Poizanter en Fradomna (**productie 7**).

50088245 M 7250659 5

10. Shaposhnikov was aldus ten tijde van de transacties bestuurder van Okean en voorzitter van de RvC van Wadan Yards. Shaposhnikov heeft in samenwerking met Hamburger en Blakur de voornaamste bezittingen onttrokken aan Okean. Dit leidt tot geen andere conclusie dan dat Shaposhnikov als bestuurder van Okean, in samenwerking met Hamburger en Blakur, onrechtmatig heeft gehandeld jegens Okean. Bovendien werd aldus de debiteur en tevens belangrijkste bezitting van Wadan Yards AS leeggetrokken ten detrimente van Wadan Yards AS en haar crediteuren.

11. De voornoemde transacties hebben geleid tot benadeling van de crediteuren van Okean (onder wie Wadan Yards AS) en van Wadan Yards AS. De curator van Wadan Yards AS stelt dat ook in een brief van 13 december 2010 (**productie 8**):

"*It is the assessment of the bankruptcy administration that the transfer of shares to Blakur Company Inc. is an illegal transaction that is voidable and should be revoked*"

Verderop in de brief vermeldt de curator dat:

"*The bankruptcy administration is of the opinion that the transfer of debt is an illegal transaction, being part of a scheme to evade major values/assets from the bankruptcy estate.*"

*Intermezzo: de Oekraïense rechtsingangprocedures*

12. In de periode tussen maart en juni 2011 heeft Okean verscheidene pogingen gedaan om in Oekraïne een procedure aanhangig te maken tegen Blakur, Poizanter en Fradomna met betrekking tot de Leningen. Naar Oekraïens recht dient de eiser alvorens de dagvaarding te mogen uitbrengen, toestemming te verkrijgen van de rechtbank om zijn vordering aanhangig te maken. De rechtbank beoordeelt de stukken dan op procesrechtelijke vereisten, zoals het voldaan hebben van het (juiste bedrag aan) griffierecht. Okean's verzoeken zijn allen op deze procesrechtelijke vereisten afgewezen, waardoor zij geen vorderingen aanhangig heeft kunnen maken in Oekraïne.



*De leningsovereenkomsten van 8 augustus 2005 en 15 juni 2007*

13. Onder een *Term Loan Facility Agreement No. 4* van 8 augustus 2005 heeft Okean Wadan Yards een krediet ter beschikking gesteld van USD 2.030.000 (productie 3, "**Term Loan No. 4**").

10

14. Onder een *Term Loan Facility Agreement No. 5* van 14 juni 2007, eveneens tussen Okean en Wadan Yards (productie 4, **"Term Loan No. 5"**), heeft Okean Wadan Yards een krediet ter beschikking gesteld van EUR 25.000.000. Deze leningsovereenkomst is gewijzigd door aanvullende overeenkomsten, de "*Additional Agreement No. 1*" van 10 juni 2008 (**productie 9**) waardoor uiteindelijk een krediet van totaal EUR 45.000.000 ter beschikking is gesteld aan Wadan Yards en de "*Additional Agreement No. 2*" van 26 december 2008, waarin de naamswijziging van Wadan Yards is vastgelegd (**productie 10**).

15. Wadan Yards heeft diverse malen getrokken onder de kredieten. Het bedrag dat thans uitstaat onder de Term Loan No. 4 is USD 2.029.784,44, exclusief rente. Onder de Term Loan No. 5 is een totaal van EUR 41.931.314 getrokken, exclusief rente.

16. Op 2 maart 2010 droeg Okean onder de "*Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 4 en 5*" de Leningen over aan Blakur waarbij het volgende wordt overwogen (**productie 11 en 12, p. 3**):

"*(B) the Borrower [Wadan Yards] is [in] need of financial assistance and the New Lender [Blakur] is prepared to provide the Borrower with the required financing for the facilitation of the new orders on shipbuilding.*"

Voor zover Okean en Logistic bekend heeft Blakur echter nooit aanvullende financiering verleend aan Wadan Yards.

17. Een ander belangrijk punt uit de financieringsdocumentatie betreft de symbolische koopprijs (productie 11 en 12, p. 5):



"*2.1. (b) In consideration of the assignment of the Assigned Rights, the New Lender [Blakur] has paid to the Original Lender [Okean] USD 100 (One Hundred US dollars), and the Original Lender hereby acknowledges the receipt and confirms the sufficiency thereof.*"

Aldus draagt Okean al haar rechten onder de Leningen over aan Blakur (zie productie 11 en 12, p. 3 onder (C)) voor een totale koopprijs van USD 200.

18. Op 14 mei 2010, slechts twee maanden later (en noemenswaardig slechts drie dagen na de hiervoor (zie nr. 9) genoemde vergadering van de RvC

50088245 M 7250659 / 5

11

van 11 mei 2010), draagt Blakur onder opnieuw een "*Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 4 en 5*" de Leningen over aan twee verschillende partijen. De Term Loan No. 4 wordt overgedragen aan Fradomna (**productie 13**) en de Term Loan No. 5 wordt overgedragen aan Poizanter (**productie 14**), beiden wederom voor de symbolische koopprijs van USD 100. De cessieaktes zijn vrijwel identiek.

19. Op 10 juni 2010 zijn drie verschillende overeenkomsten tot zekerheid gesloten tussen Wadan Yards en Poizanter. Het betreft de volgende drie overeenkomsten:

    (i) Mortgage Agreement (**productie 15**)
    (ii) Pledge Agreement (**productie 16**)
    (iii) Rights to Operating Account Pledge Agreement (**productie 17**)

20. Op 10 juni 2010 heeft Wadan Yards eveneens pandrechten op haar onroerend goed verstrekt aan Fradomna zoals omschreven in de *Pledge Agreement* (**productie 18**). Uit de reeds aangehaalde notulen van de vergadering van de RvC van 11 mei 2010 (productie 7, zie nr. 9) blijkt dat de zekerheden aan Poizanter en Fradomna werden verstrekt, zodat zij Wadan Yards aanvullende financiering zouden verstrekken. Aanvullende financiering die Wadan Yards nimmer heeft ontvangen, naar alle waarschijnlijkheid omdat het nooit de bedoeling van Poizanter, Fradomna of het bestuur van Wadan Yards is geweest dat dergelijke financiering ter beschikking aan Wadan Yards zou worden gesteld. Door het verstrekken van de voorgaande zekerheden hebben Poizanter en Fradomna in feite zekerheidsaanspraak op *alle* activa van Wadan Yards verkregen.



*De overdracht van de Aandelen*

21. Op grond van de SPA van 26 februari 2010 tussen Okean en Blakur heeft Blakur 137.102.938 geregistreerde aandelen in Wadan Yards verkregen, hetgeen 98,74% van de uitgegeven aandelen vertegenwoordigt (productie 2). Blakur is onder de SPA een Koopprijs van EUR 5.000.000 verschuldigd aan Okean, de Koopprijs zou worden voldaan in twee termijnen:

    *2.2. (b) The Purchase Price shall be paid in two instalments:*

    - *The first instalment, in the amount of EUR 400.000 (four hundred [thousand] Euro [...] shall be paid within 30 (thirty) days following the Completion Date to the account of the Seller [Okean][...].*

- *The second instalment, in the amount of EUR 4.600.000 (four million six hundred [thousand] Euro) [...] shall be paid within 12 (twelve) months following the Completion Date to the account of the Seller [...].*

22. De SPA wordt echter op 9 maart 2010 aangepast (**productie 19**):

"*4. The Parties hereunder have agreed to amend Clause 2.2 (b) of the SPA as follows:*

"*(b) The Purchase Price will be paid by the Purchaser by its execution of a promissory note payable to the Seller for the amount of EUR 5.000.000 (five million Euro), said promissory note to be governed and enforceable under the laws of the British Virgin Islands and providing for payment in full to be made no later that 12 (twelve) months from the date of execution of the SPA. The promissory note will be issued by the Purchaser within 45 (forty five) days from the date of execution of the SPA.*""



23. De schuldbrief is uitgegeven door Blakur en ondertekend door Hamburger (**productie 20**), echter, zoals reeds in nr. 3 aangegeven, is tot op heden de Koopprijs niet voldaan. Blakur bezit ook geen zelfstandig actief waaruit zij de Koopprijs zou kunnen voldoen en zij heeft dat ook niet gehad. Okean heeft ook nooit onderzocht of Blakur in staat zou zijn de Koopprijs te financieren en heeft evenmin zekerheid voor de betaling van de koopprijs bedongen of verkregen. Het is evident dat het nooit de bedoeling van partijen is geweest dat Blakur ook werkelijk de Koopprijs zou voldoen. De "verkoop" van de Aandelen aan Blakur moet derhalve beschouwd worden als een rechtshandeling om niet.

24. In april 2010 heeft Blakur de Aandelen overgedragen aan AELITA. Op of rondom 25 augustus 2010 heeft AELITA vervolgens de Aandelen overgedragen aan vijf verschillende Panamese en Britse Maagdeneilanden vennootschappen voor 19,7474% elk (**productie 21**):

   1. Escalibra Corporation
   2. Trustworthy Service Limited
   3. Feorentino Optima Limited
   4. Megawealth Finance Limited
   5. Anda Management Limited