13

25. Uit de zoekresultaten van de Oekraïense Securities Commission Database blijkt dat in of rondom april 2011 de Aandelen vervolgens zijn overgedragen aan Olympus (productie 21). Persberichten van begin februari van dit jaar citeren Smart-Holding's voorzitter van de raad van commissarissen, Vadim Novinsky en melden dat een 'mondelinge overeenstemming' met betrekking tot de verkoop door Olympus aan Smart Holding van 50% van de Aandelen (**productie 22**). Ten tijde van het uitbrengen van deze dagvaarding is het Okean en Logistic niet bekend of de aandelenoverdracht daadwerkelijk heeft plaatsgevonden of nog zal moeten plaatsvinden.

*De overdracht van de Aandelen is paulianeus*

26. De verkoop en overdracht van de Aandelen aan Blakur (SPA van 26 februari 2010) is benadelend voor de crediteuren van Okean en voor Wadan Yards AS in het bijzonder, zodat zij vernietigbaar is op grond van artikel 3:45 BW.

27. De zogenaamde verkoop van de Aandelen op grond van de SPA betreft in feite een rechtshandeling om niet. Zoals uiteengezet in nrs. 21 t/m 23 zal er vanuit gegaan moeten worden dat het nooit de bedoeling van partijen is geweest dat Blakur de Koopprijs zou voldoen; de Koopprijs is slechts in de SPA opgenomen om de schijn te wekken dat het een daadwerkelijke koopovereenkomst betrof. De atypische voorwaarden met betrekking tot de Koopprijs in het licht van de gegoedheid van Blakur, en dan met name het feit dat de Koopprijs pas na het verloop van twaalf maanden opeisbaar zou worden zonder dat ook maar enige zekerheid behoefde te worden gesteld, alsmede dat niet blijkt van enige poging om de zogenaamde Koopprijs te innen en het feit dat er ook nooit een cent voor de Aandelen is betaald, demonstreren dat hier geen sprake is van een serieuze verkoop.

28. Dat het nooit de bedoeling van partijen is geweest dat Blakur de Koopprijs zou voldoen, wordt onderstreept door het feit dat eenzelfde enig bestuurder van Blakur zowel de SPA, de schuldbrief (zie nr. 23), als de verklaring omtrent de bezittingen en schulden van Blakur bij het verzoek om vrijwillige ontbinding op 30 maart 2011 heeft ondertekend. Hamburger verklaart ruim een jaar na het tekenen van de SPA, dat Blakur geen verplichtingen meer heeft jegens derden (**productie 23**), terwijl de Koopprijs nu juist net opeisbaar zou zijn geworden.

29. Uit het voorgaande volgt dat Okean en Blakur door de SPA aan te gaan belangrijke bezittingen hebben onttrokken aan Okean en aldus de credi-

50088245 M 7250659 / 5

14

teuren van Okean benadeeld zijn. Het is evident dat Okean, en in het bijzonder Shaposhnikov (zie ook nr. 8) wist, althans behoorde te weten dat benadeling van een of meer crediteuren in hun verhaalsmogelijkheden het gevolg zou zijn.

30. Mocht niettemin worden aangenomen dat de Koopprijs een werkelijke koopprijs is en de verkoop van de Aandelen op grond van de SPA een rechtshandeling is anders dan om niet, doet dit niet af het paulianeuse karakter van de overdracht van de Aandelen. Ook aan de vereisten van artikel 3:45 BW om een rechtshandeling anders dan om niet te vernietigen is voldaan, omdat de transactie ten gevolge had dat de Aandelen zonder een reële tegenprestatie uit het vermogen van Okean vloeiden. De Aandelen waren aanmerkelijk meer waard dan de koopprijs van EUR 5.000.000 en de transactie heeft zonder enige waardering van de Aandelen plaatsgevonden. Okean was hiermee ongetwijfeld bekend en ook Blakur, als wederpartij bij de transactie, wist althans behoorde dan ook te weten dat de verkoop van de Aandelen benadelend zou zijn jegens de crediteuren van Okean.

31. De vraag of de verkoop en overdracht van de Aandelen vernietigd kan worden wegens benadeling van de crediteuren van Okean wordt beheerst door Nederlands recht, omdat Okean een Nederlandse rechtspersoon is waarvan het centrum van voornaamste belangen zich in Nederland bevindt.



32. **Logistic vernietigt derhalve hierbij** de *Share Sale and Purchase Agreement no. 114 B/10* (productie 2) op grond van artikel 3:45 BW althans, voor zover de pauliana-vraag naar buitenlands recht beoordeeld zou moeten worden wegens schending van de crediteurenbeschermende bepalingen van dat buitenlands recht. Okean erkent de vernietiging.

33. Als gevolg van de vernietiging geldt op grond van artikel 3:45 BW dat de Aandelen niet geldig overgedragen zijn aan Blakur en in het vermogen van Okean zijn gebleven.

34. Olympus zal de Aandelen om niet verkregen hebben en voor zover dat niet het geval is is zij niet te goeder trouw, omdat bij een redelijkerwijs van haar te verwachten titelonderzoek zou zijn gebleken dat de verkoop aan Blakur paulianeus was. Voor zover Smart-Holding reeds 50% van de Aandelen heeft verkregen, is zij overeenkomstig Olympus niet te goeder trouw.

15

*De cessieakten zijn paulianeus*

35. De cessies van 2 maart 2010 zijn benadelend voor de crediteuren van Okean en Wadan Yards AS in het bijzonder, zodat zij vernietigbaar zijn op grond van artikel 3:45 BW.

36. De rechten van Okean onder de Leningen zijn overgedragen aan Blakur voor de symbolische prijs van USD 100 voor iedere lening. Het krediet dat onder de Leningen is verschaft bedraagt maar liefst USD 2.029.784,44 en EUR 41.931.314. De totale koopprijs staat geenszins in verhouding tot de actuele waarde van de betreffende leningen, mede gezien de mogelijkheid opgenomen in de cessieakten om zekerheden te doen vestigen ten behoeve van Blakur. In feite betreffen de cessies rechtshandelingen om niet, waaruit in samenhang met het feit dat Okean door de transacties feitelijk insolvent is geraakt althans haar insolventie is verergerd, reeds blijkt dat de crediteuren van Okean zijn benadeeld door deze transacties.

37. Er bestaat geen verhouding tussen de Leningen en de SPA, althans valt geen samenhang tussen de transacties af te leiden uit de kredietdocumentatie. De Leningen zijn overgedragen met de bedoeling dat zowel Blakur, als haar rechtsopvolgers Poizanter en Fradomna aanvullend krediet zouden verschaffen aan Wadan Yards (zie nr. 16). Wadan Yards heeft echter geen enkel aanvullend krediet mogen ontvangen, hetgeen ook nooit daadwerkelijk de bedoeling van partijen lijkt te zijn geweest. Hieruit volgt eveneens het paulianeuse en onrechtmatige karakter van de overdracht van de Leningen. De curator van Wadan Yards AS heeft de cessieakten onderdeel genoemd van een samenzwering waarmee substantiële bezittingen onttrokken zijn aan de boedel (zie nr. 11).

38. Mocht in tegenstelling tot het bovenstaande worden aangenomen dat de cessieakten rechtshandelingen anders dan om niet omvatten, doet dit niet af het paulianeuse karakter van de overdracht van de Leningen. Ook aan de vereisten van artikel 3:45 BW om een rechtshandeling anders dan om niet te vernietigen is voldaan, waarbij met betrekking tot de wetenschap van Blakur kan worden verwezen naar nr. 30.



39. **Logistic vernietigt derhalve hierbij:** (i) *Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 4* tussen Okean en Blakur (productie 11) en (ii) *Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 5* tussen Okean en Blakur (productie 12), ieder afzonderlijk zowel als gezamenlijk, op grond van ar-

tikel 3:45 BW althans, voor zover de pauliana-vraag naar buitenlands recht beoordeeld zou moeten worden wegens schending van de crediteurenbeschermende bepalingen van dat buitenlandse recht. Okean erkent de vernietiging.

40. De verkregen rechten van de Poizanter en Fradomna dienen niet geëerbiedigd te worden op grond van artikel 3:45 lid 5 BW, omdat zij de Leningen om niet verkregen hebben, althans niet te goeder trouw verkregen hebben. Ook Poizanter en Fradomna hebben slechts een symbolische koopprijs betaald, waardoor zij bovendien wisten of behoorden te weten dat benadeling van de crediteuren van Okean had plaatsgevonden. Bovendien blijkt uit nr. 20 dat Poizanter en Fradomna wel degelijk ten gevolge van de rechtshandelingen gebaat zijn.

41. Derhalve zijn de rechten onder de Leningen niet geldig overgedragen aan Blakur en zijn de rechten onder de Leningen in het vermogen van Okean gebleven.

*Onrechtmatige daad*

42. De hiervoor besproken reeks van handelingen van Hamburger, Olympus, Poizanter, Fradomna en Smart-Holding zijn onrechtmatig jegens Okean, alsmede jegens de crediteuren van Okean en Wadan Yards AS. Vernietiging van een deel van de gewraakte rechtshandelingen staat niet aan een vordering uit onrechtmatige daad in de weg. Voor zover de verrichte rechtshandeling paulianeus zijn geweest, staat het onrechtmatige karakter daarvan reeds vast.

43. De twee belangrijkste personen die feitelijk de touwtjes in handen hadden gedurende de transacties van Okean naar Blakur en van Blakur naar de verschillende derden, zijn Shaposhnikov, ten tijde van de transacties bestuurder van Okean, alsmede voorzitter van de RvC van Wadan Yards en Hamburger, enig bestuurder van Blakur. Shaposhnikov en Hamburger hebben in samenwerking met de overige gedaagden de voornaamste bezittingen uit het vermogen van Okean weggesluisd.



44. De moeder van Okean, Wadan Yards AS was ten tijde van de transacties reeds in financiële problemen gekomen. Op het moment dat de transacties plaats vonden trachtte zij echter haar vermogenspositie te verbeteren en een faillissement te voorkomen. Door de transacties is dit feitelijk onmogelijk geworden en zijn de crediteuren van Wadan Yards AS eveneens benadeeld. Het gevolg van het verlies van de Aandelen en de Leningen

17

heeft geleid tot het faillissement van Wadan Yards AS. De handelingen van Hamburger, Olympus, Poizanter, Fradomna en Smart-Holding zijn daarom eveneens onrechtmatig jegens de crediteuren van de moedervennootschap Wadan Yards AS.

45. Ter zake van de onrechtmatige daadsvordering verzoeken Okean en Logistic om verwijzing naar de schadestaatprocedure. De daartoe rechtens vereiste aannemelijk van de mogelijkheid van schade en causaal verband volgt uit het bovenstaande. Indien de pauliana-vorderingen slagen bestaat de schade uit de inmiddels ingetreden waardevermindering van de Aandelen en de Leningen. Voor zover de pauliana-vorderingen niet slagen bestaat deze uit de waarden van de Aandelen en de Leningen ten tijde van de litigieuze transacties. De vaststelling van deze waarde vergt een nader onderzoek naar de realistische waarde van deze activa op een van deze of beide peilmomenten.

**Bekende weren**

46. Door Olympus, Fradomna, Poizanter, Blakur, Hamburger en Smart-Holding is in de fase voorafgaande aan deze dagvaarding tegen de eis geen verweer gevoerd. Okean en Logistic zijn daardoor niet in staat reeds in deze dagvaarding overeenkomstig art. 111 lid 3 Rv op eventueel verweer te reageren, noch om aan te geven welke bewijsmiddelen zij ter staving van eventueel betwiste gronden heeft.

**Rechtsmacht**



47. De Rechtbank Amsterdam is op grond van artikel 2 lid 1 EEX-Verordering (woonplaats gedaagde) bevoegd van de eis van Okean en Logistic kennis te nemen, nu Olympus statutair gevestigd is en derhalve woonplaats heeft in Amsterdam, terwijl ten aanzien van de overige gedaagden uit het voorgaande blijkt dat sprake is van de in artikel 6 lid 1 EEX-Verordening en artikel 6 lid 1 EVEX-Verdrag bedoelde samenhang.

48. Overigens komt de Rechtbank Amsterdam ook rechtsmacht toe en is zij bevoegd over het onderhavige geschil te oordelen op grond van artikel 5 lid 3 EEX-Verordening en artikel 5 lid 3 EVEX-Verdrag, de plaats waar de schade is ingetreden (*Erfolgsort*) is immers gelegen in Nederland.

**Producties, bewijsaandraagplicht en bewijsaanbod**

49. Ter ondersteuning van hun stellingen zullen door Okean en Logistic de in deze dagvaarding genoemde producties, voorafgegaan door een overzicht, op de eerst dienende dag in het geding worden gebracht.

50. In aanvulling op de hiervoor genoemde producties bieden Okean en Logistic, zonder geacht te willen worden onverplicht enige bewijslast op zich te hebben genomen die niet rechtens op haar rust, aan haar stellingen - voor zover deugdelijk betwist - te bewijzen door alle middelen rechtens.

51. Okean en Logistic bieden tevens reeds nu aan tegenbewijs te leveren door alle middelen rechtens, in het bijzonder door het doen horen van getuigen, tegen stellingen van gedaagden, voor zover (i) de rechtbank op enig moment in de procedure zodanige stellingen in beginsel bewezen acht en (ii) Okean en/of Logistic deze stellingen heeft betwist. Okean en Logistic wijzen erop dat de specificatie-eis niet geldt voor het aanbieden van tegenbewijs.[1]

**Kosten**

52. Okean en Logistic vorderen bij de kosten van deze procedure (deels onder voorwaarde ex art. 3:296 lid 2 BW) tevens de volgens het liquidatietarief Rechtbanken en Hoven verschuldigde nakosten (EUR 131, zonder en EUR 199,= met betekening[2]).

53. Als uitvloeisel van de hiervoor genoemde EU Betekeningsverordening (artikel 5 j° artikel 8) respectievelijk artikel 7 j° artikel 11 van het Verdrag, dient deze dagvaarding te zijn vertaald in de Griekse respectievelijk Duitse respectievelijk Oekraïense taal en dient hij in Cyprus, respectievelijk Zwitserland, respectievelijk Oekraïne door de daartoe bevoegde deurwaarder/instantie aan Fradomna, respectievelijk Poizanter, respectievelijk Hamburger, respectievelijk Smart-Holding te worden betekend / dient deze deurwaarder/instantie daarvan aan Fradomna, Poizanter, Hamburger en Smart-Holding kennis te geven, en Okean en Logistic hebben er dan ook recht op en belang bij dat de hiermee samenhangende kosten, ter zake waarvan bij akte een afschrift van de nota van de vertalers en, in voor-



---

[1] Zie art. 151 lid 2 Rv en HR 9 januari 1998, NJ 1999, 413, m. nt. HJS en herhaald in HR 29 april 2011, LJN BP9860.

[2] Zie HR 10 december 2010 (LJN BO6879) en HR 21 mei 2010 (LJN BL5447).

50088245 M 7250659 / 5

19

komend geval, van het bewijs van de buitenlandse betekenings-/uitreikingskosten (**productie 24**) in het geding zullen worden gebracht, door Fradomna respectievelijk Poizanter respectievelijk Hamburger respectievelijk Smart-Holding worden vergoed.

**Mitsdien**

het de rechtbank behage bij vonnis voor zoveel mogelijk uitvoerbaar bij voorraad:

(i) te verklaren voor recht de Share Sale and Purchase Agreement van 26 februari 2010, de Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 4 van 2 maart 2010 en de Deed of Assignment and Amendment to Term Facility Loan Facility Agreement No. 5 van 2 maart 2010 nietig, dat geen overdracht tussen Okean en Blakur van de Aandelen en de Leningen heeft plaatsgevonden en dat Okean rechthebbende is gebleven op de Aandelen en op de vorderingen uit hoofde van de Leningen;

(ii) gedaagden sub 1, 2, 3, 5 en 6, Olympus, Poizanter, Fradomna, Hamburger en Smart-Holding, hoofdelijk te veroordelen tot schadevergoeding wegens onrechtmatige daad gepleegd jegens de gezamenlijk schuldeisers van Okean en Wadan Yards AS, op te maken bij staat en te vereffenen volgen de wet, een en ander met inbegrip van wettelijke rente;

(iii) gedaagden sub 1, 2, 3, 5 en 6, Olympus, Poizanter, Fradomna, Hamburger en Smart-Holding hoofdelijk te veroordelen in de kosten van deze procedure, een en ander te vermeerderen met de wettelijke rente vanaf 14 dagen, althans vanaf een door de rechtbank redelijk geachte termijn, na het te dezen te wijzen vonnis, indien en voor zover gedaagden deze kosten niet voordien hebben voldaan;

(iv) Poizanter, Fradomna, Hamburger respectievelijk Smart-Holding te veroordelen in de kosten gemaakt in verband met de Griekse respectievelijk Duitse respectievelijk Oekraïense vertaling van deze dagvaarding en de betekening/uitreiking van deze dagvaarding in Cyprus respectievelijk Zwitserland respectievelijk Oekraïne zoals hiervoor onder 53 omschreven, een en ander te vermeerderen met de wettelijke rente vanaf 14 dagen, althans vanaf een door de rechtbank redelijk geachte termijn, na het te dezen te wijzen vonnis, indien en voor zover Poizanter, Fradomna, Hamburger respectievelijk Smart-Holding deze kosten niet voordien hebben voldaan;



20

(v) gedaagden sub 1, 2, 3, 5 en 6, Olympus, Poizanter, Fradomna, Hamburger en Smart-Holding hoofdelijk te veroordelen in de nakosten ten bedrage van respectievelijk EUR 131,= zonder betekening en EUR 199,= met betekening, laatstbedoeld bedrag te vermeerderen met de wettelijke rente indien en voor zover gedaagden dit niet binnen (de wettelijk vereiste termijn van) twee dagen, althans binnen een door de rechtbank redelijk geachte termijn na betekening van het te dezen te wijzen vonnis hebben voldaan.

De kosten van dit exploot zijn, inclusief BTW, EUR ...

NB: de explootkosten zijn verhoogd met BTW, nu Logistic uitdrukkelijk heeft verklaard de omzetbelasting niet te kunnen verrekenen in de zin van de Wet op de Omzetbelasting 1968.

Hierbij verklaart ondergetekende dat bovenstaande verschotten zijn gemaakt voor de goede verrichting van de ambtshandelingen en dat zij noodzakelijk waren, alsmede dat ondergetekende geen rechtstreeks of middellijk belang heeft in de onderneming of derde die bovenstaande verschotten factureert.

Gerechtsdeurwaarder



Deze zaak wordt behandeld door mr. R.J. van Galen, NautaDutilh N.V., Strawinskylaan 1999 (1077XV) te Amsterdam, T 020-71 71 677, F 020-7171 347, E robert.vangalen@nautadutilh.com. Dossiernummer: 50088245.

Alle berichtgeving in verband met rolhandelingen richten aan:
Bureau Proceskwaliteit NautaDutilh N.V., Postbus 7113, 1007 JC Amsterdam,
T 020-71 71 788/790/836, F 020-71 71 392, E bureauproceskwaliteit@nautadutilh.com.

50088245 M 7250659 / 5

