UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re Application Pursuant to 28 U.S.C. § 1782 of
OKEAN B.V. and LOGISTIC SOLUTION
INTERNATIONAL LIMITED,

                              Petitioners,

          – to take discovery of –

CHADBOURNE & PARKE LLP,

                              Respondent.

Misc. No. 12-00104 (Part 1)

**DECLARATION OF
ANNA V. PUTINTSEVA
IN SUPPORT OF
RESPONDENT'S MOTION
TO QUASH SUBPOENA**

---

ANNA V. PUTINTSEVA, hereby declare and state pursuant to 28 U.S.C. § 1746:

1. I am an attorney with the law firm of Chadbourne & Parke LLP, the respondent *pro se* ("Chadbourne") in the above-captioned proceeding. I have been duly admitted to practice law in Ukraine since 2001 and am based in Chadbourne's offices located at 25B Sahaydachnoho Street, Kyiv, Ukraine. I hold a *juris doctor* degree from the International Institute of Linguistics and Law in Kyiv, Ukraine and a *master of laws* degree from the University of Washington School of Law. I make this declaration, based upon my own personal knowledge and a review of documents in my possession, in support of Respondent's Motion to Quash Subpoena.

2. We were retained by a British Virgin Islands-based company to provide legal advice to it and a group of companies, which included without limitation Okean B.V. ("Okean," a Dutch company), Mykolayiv Shipyard Okean ("Wadan Yards"), Blakur Company Inc. ("Blakur," a British Virgin Islands company), Poizanter Holdings Ltd. ("Poizanter," a Cyprus company), Fradomna Investments Ltd. ("Fradomna," a Cyprus company), and Olympus Investments (2001) B.V. ("Olympus," a Dutch company). Specifically, in 2010 we were retained

to provide advice on Ukrainian law with respect to certain transactional, bankruptcy, and litigation matters concerning the Open Joint Stock Company Wadan Yards Okean ("Wadan Yards"), a company organized under the laws of Ukraine that owned and operated a shipyard located in Mykolaiv, Ukraine.

3. Among other matters, we were retained to provide Ukrainian legal advice concerning a contemplated Share Sale and Purchase Agreement No. 114 B/10, which was entered into by Okean and Blakur as of February 26, 2010. Pursuant to that agreement, Okean sold certain registered shares of Wadan Yards to Blakur at a purchase price of €5,000,000. We later provided Ukrainian legal advice concerning subsequent transactions whereby those shares came to be owned by Olympus.

4. We were also retained to provide Ukrainian legal advice concerning the March 2010 assignment of two existing loan facility agreements (together, the "Loan Facility Assignment Agreements") that had been entered into between Okean and Wadan Yards in 2005 and 2007, respectively. Specifically, the Loan Facility Assignment Agreements executed by Okean, Blakur, and Wadan Yards included (i) the Deed of Assignment and Amendment to Term Loan Facility Agreement No. 4, dated as of March 2, 2010; and (ii) the Deed of Assignment and Amendment to Term Loan Facility Agreement No. 5, dated as of March 2, 2010. We further provided Ukrainian legal advice concerning Blakur's May 2010 assignment of the two Loan Facility Assignment Agreements to Fradomna and Poizanter.

5. In October 2011, Wadan Yards entered bankruptcy proceedings in Ukraine. We provided Ukrainian legal advice concerning petitions filed on behalf of each of Poizanter, Fradomna, and Olympus with the commercial court in Ukraine, which request the court's

recognition of their respective claims against the estate of Wadan Yards. As of the date of this declaration, those bankruptcy proceedings are ongoing.

6.  I was one of several Ukrainian attorneys employed in Chadbourne's office in Kyiv, Ukraine that provided the Ukrainian legal advice and services concerning the foregoing matters. None of the attorneys operating out of Chadbourne's offices in the United States provided any such legal advice or services. None of the Ukrainian Chadbourne attorneys provided any business advice concerning the foregoing matters.

7.  It is a common practice for clients based outside of Ukraine but doing business in Ukraine to execute powers of attorney in favor of one or more of their Ukrainian attorneys. In practice, in order for contracts and other legal documents to be legally recognized in Ukraine by third parties, including, *inter alia*, the state authorities, they typically must be executed on an original bound document and, in certain cases, in the presence of a Ukrainian notary, which requires and/or makes it efficient to secure the presence of the executing party in Ukraine. Thus, powers of attorney are used to avoid the inconvenience of foreign clients having to travel to Ukraine to execute documents in person. In most cases only an authorized representative may file an official document with a state authority in Ukraine. If a representative of a foreign company acts under a power of attorney, he must present a certified copy of a duly apostilled, notarized and translated power of attorney at the time of the filing of a respective document with a Ukrainian state authority. Consistent with this practice, Blakur, Fradomna, and Poizanter granted customary and appropriate powers of attorney to certain of Chadbourne's Ukrainian attorneys for this purpose. At all relevant times, those attorneys acted under those powers of attorney only at the direction and pursuant to the instructions of their clients. Moreover, the only actions that those attorneys performed under those powers of attorney were to execute certain

legal documents on behalf of our clients and, where necessary, submit certain of them to the appropriate governmental authorities in Ukraine.

8. For example, Fradomna director Sylvia Janet Jensen executed a power of attorney on behalf of Fradomna, dated May 3, 2010, which named four Ukrainian attorneys then employed by Chadbourne. Pursuant to that power of attorney, and as directed and instructed by that client, the named Chadbourne attorneys signed certain security documents on behalf of Fradomna and registered the corresponding encumbrances with the appropriate governmental registers in Ukraine. It was our clients, not any Chadbourne attorney, who made the business decision to enter into those security documents on the terms specified therein.

9. Chadbourne was retained by its clients with the expectation that Chadbourne would maintain the confidentiality of information shared between the clients and Chadbourne. As is customary and consistent with those expectations, Chadbourne has maintained and continues to maintain the confidentiality of any and all files concerning its representation of its clients in the foregoing matters. As a matter of course, Chadbourne's files in connection with its representation of its clients in these matters are stored in Ukraine. There is no reason to believe that any such files are located within the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 8th day of May, 2012.

*A. Putintseva*
Anna V. Putintseva