UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Application Pursuant to 28 U.S.C. § 1782 of
OKEAN B.V. and LOGISTIC SOLUTION
INTERNATIONAL LIMITED,

               Petitioners,

      – to take discovery of –

CHADBOURNE & PARKE LLP,

          Respondent.

Misc. No. 12-00104 (Part 1)
ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION TO COMPEL**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 277-6500
Fax: (212) 277-6501

*Attorneys for Petitioners Okean B.V.*
*and Logistic Solution International Limited*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................5

ARGUMENT ....................................................................................................................6

I.      CHADBOURNE'S BLANKET OBJECTION TO EVERY DOCUMENT
REQUEST IN THE SECOND SUBPOENA AND WHOLESALE
REFUSAL TO PRODUCE OR LOG ANY DOCUMENT WHATSOEVER
IS UNWARRANTED.................................................................................................6

II.     THE THREE GROUNDS CHADBOURNE ASSERTS IN REFUSING TO
COMPLY WITH THE SECOND SUBPOENA – THE ALLEGED
AVAILABILITY OF THE DOCUMENTS IN THE DUTCH LITIGATION,
THE LOCATION OF THE DOCUMENTS, AND THE PRIVILEGED
NATURE OF THE DOCUMENTS – ARE UNFOUNDED FOR THE SAME
REASONS THAT SUCH GROUNDS DO NOT SUPPORT
CHADBOURNE'S MOTION TO QUASH THE FIRST SUBPOENA .................8

    A.    Chadbourne Does Not Dispute That Okean's Application Meets All
The Statutory Requirements For Discovery Pursuant To 28 U.S.C.
§ 1782.................................................................................................................8

    B.    Section 1782's Non-Statutory Considerations All Weigh In Favor Of
Allowing Okean's Discovery Of Chadbourne Sought In The Second
Subpoena.............................................................................................................9

        1.    Contrary To Chadbourne's Blanket Objection To The Second
Subpoena, The Discovery Sought Is *Not* Available From
Those Who Are Parties To The Dutch Litigation. .........................10

        2.    The Discovery Sought Is Neither Unduly Intrusive Nor
Burdensome. ....................................................................................11

            (a)    The Requested Documents Are Accessible and Present
No Obstacle to Discovery. ..................................................12

            (b)    No "Legally Applicable Privilege" Precludes the
Requested Discovery. ..........................................................14

DOCSNY-508799v1

(c)     Chadbourne Is Obligated To Produce a Privilege Log
Along With Documents Responsive To the Second
Subpoena..........................................................................15

CONCLUSION...............................................................................................................16

DOCSNY-508799v1

## TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum
    Co., 105 F.R.D. 16 (S.D.N.Y. 1984)...................................................................7

Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095 (2d Cir. 1995) .............................11

In re Application of Bank of Cyprus Pub. Co. Ltd., No. 10 Misc. 23, 2011 U.S. Dist.
    LEXIS 6082 (S.D.N.Y. Jan. 21, 2011) ...............................................................10

In re Application of Chevron Corp., 749 F. Supp. 2d 141 (S.D.N.Y. 2010) ................16

In re Application of Eli Lilly & Co., No. 3:09MC296 (AWT), 2010 U.S. Dist. LEXIS
    59121 (D. Conn. June 15, 2010).........................................................................13

In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88, 2006
    WL 3844464 (S.D.N.Y. Dec. 29, 2006) .............................................................13

In re Application of Godfrey, 526 F. Supp. 2d 417 (S.D.N.Y. 2007).............................13

In re Application of Metallgesellschaft AG, 121 F.3d 77 (2d Cir. 1997).......................10

In re Application Pursuant to 28 U.S.C. Section 1782, 249 F.R.D. 96 (S.D.N.Y. 2008) ...............7

In re Bayer AG, 146 F.3d 188 (3d Cir.1998)...................................................................7

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) .........................9, 10

Malev Hungarian Airlines v. United Techs. Int'l Inc., 964 F.2d 97 (2d Cir.), cert. denied,
    506 U.S. 861 (1992)...................................................................................7, 11

Minatec Fin. S.a.r.l. v. SI Group, Inc., Civ. No. 1:08-CV-269, 2008 U.S. Dist. LEXIS
    63802 (N.D.N.Y. Aug. 18, 2008) .......................................................................13

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978).............................................7

von Bulow by Auersperg v. von Bulow, 811 F.2d 136 (2d Cir. 1987)...........................16


STATUTES

28 U.S.C. § 1782............................................................................................... passim

DOCSNY-508799v1

Page(s)

RULES

Fed. R. Civ. P. 26(b)(5)(A) ........................................................................................16

Federal Rule 26(b) ......................................................................................................7

S.D.N.Y. Civ. R. 26.2 ................................................................................................16


OTHER AUTHORITIES

S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782 ..............................7

DOCSNY-508799v1

Petitioners Okean B.V. and Logistic Solution International Limited (together, "Okean") respectfully submit this memorandum of law in support of their motion for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") and Rule 37(a) of the Federal Rules of Civil Procedure compelling Chadbourne & Parke LLP ("Chadbourne") to produce documents in compliance with the Subpoena to Produce Documents, Information, or Objects, dated June 6, 2012 (the "Second Subpoena").

## PRELIMINARY STATEMENT

In response to Okean's application pursuant to Section 1782, this Court issued an Order dated April 6, 2012 (the "§ 1782 Order") authorizing Okean to take discovery from Chadbourne. (A copy of the § 1782 Order is attached as Exhibit 1 to the Declaration of Deborah A. Skakel in Support of Petitioners' Motion to Compel (the "Skakel Declaration").)  Pursuant to the § 1782 Order, on or about April 10, 2012, Okean served on Chadbourne a Subpoena to Produce Documents, Information, or Objects (the "First Subpoena") (Skakel Decl. Ex. 2).  Chadbourne filed Objections to the First Subpoena (Skakel Decl. Ex. 3), and then on May 8, 2012, moved to vacate the § 1782 Order and quash the First Subpoena; Okean filed opposition papers to this motion on June 19, 2012 (Skakel Decl. ¶¶ 10-12, Exs. 6-7).

On June 6, 2012, and also pursuant to the § 1782 Order, Okean served on Chadbourne a second Subpoena to Produce Documents, Information, or Objects (the "Second Subpoena") (Skakel Decl. Ex. 4).  This Second Subpoena, which is the subject of the instant motion to compel, arises out of Okean's ongoing investigation of the series of transactions and related events that resulted in Okean being stripped of valuable stock shares and loan receivables. Chadbourne's Objections to the Second Subpoena, filed on June 14, 2012, are substantively identical to its Objections to First Subpoena (Skakel Decl. Ex. 5).  As such, the legal arguments in support of Okean's motion to compel compliance with the Second Subpoena are substantively

identical to the legal arguments Okean asserted in opposition to Chadbourne's motion to quash

the First Subpoena and to vacate the § 1782 Order.[1]

Both in its motion to quash the First Subpoena and its Objections to the Second

Subpoena, Chadbourne objects to each and every document request, refuses to produce any

document at all, and fails to provide any privilege log whatsoever.  Chadbourne's wholesale non-

compliance with the First and Second Subpoenas is based on three purported grounds:

- Chadbourne claims that Section 1782 does not permit discovery of documents outside the United States.

- Chadbourne contends that the discovery Okean seeks in the First and Second Subpoenas under Section 1782 is available – and should be obtained – from the defendants in the underlying foreign proceeding, rather than from Chadbourne.

- Chadbourne categorically asserts that the documents responsive to the First and Second Subpoenas are protected by the attorney-client privilege.

Just as these three purported grounds fail to justify Chadbourne's objections to and non-

compliance with the First Subpoena, they also do not support Chadbourne's same objections and

same non-compliance with the Second Subpoena.

First, and as established in Okean's opposition to Chadbourne's motion to quash,

Chadbourne ignores controlling precedent and relies on dicta in arguing that Section 1782 does

not allow discovery of documents outside the United States.  Chadbourne's faulty argument

necessitates an alteration of the plain language of Section 1782 – which requires that the

subpoenaed party (not the subpoenaed documents) be found in this district – and should therefore

be rejected.

Chadbourne's objection based on the location of the documents should be rejected for the

additional reason that the factual predicate for its argument asserted in its motion to quash is – at

---

[1]     The parties have agreed to a joint hearing of these two related motions on July 31, 2012.

best – incomplete. Chadbourne cleverly asserts that the "documents" responsive to the Subpoena are not physically stored in New York – but limits that assertion to the paper or hard copy files. What Chadbourne – which boasts of its "single, integrated partnership" – fails to inform this Court is where its electronically stored information ("ESI") is stored. Okean must assume that Chadbourne's ESI is available to and accessible by the attorneys in its global offices, since it "operates as a single, integrated partnership, rather than a U.S.-based firm with a network of overseas offices."[2] Such ESI should therefore be available to and accessible by Chadbourne's New York headquarters – and should therefore be produced in compliance with the § 1782 Order and Second Subpoena.

Second, Chadbourne's objection to the Second Subpoena based on the purported ability and obligation of Okean to obtain the subpoenaed documents in discovery from the defendants in the underlying litigation in the District Court of Amsterdam in the Netherlands (the "Dutch Litigation") misapprehends both the Dutch procedural code (which does not provide for discovery such as that sought under Section 1782) and the governing case law (which rejects the notion that the Section 1782 petitioner must first seek the discovery in the foreign proceeding).

Third, Chadbourne's objection to the Second Subpoena based on the categorical, absolute position that every responsive document (paper and electronic) reflects the rendering of legal advice and is therefore protected by the attorney-client privilege is simply not credible. This is particularly so given the nature of the activities undertaken by the Chadbourne attorneys – functioning as business agents for the companies that were parties to the series of interrelated transactions that make up the fraudulent scheme by which Okean was stripped of over EUR 5 million worth of stock shares and loan receivables totaling more than EUR 50 million. And,

---

[2]     CHADBOURNE & PARKE LLP, http://www.chadbourne.com/firmoverview/ (last visited July 6, 2012).

DOCSNY-508799v1

based on information Okean has recently obtained during its ongoing investigation, two partners from Chadbourne's New York office join the attorneys from Chadbourne's Kiev and Moscow office who have undertaken activities as a business agent on behalf of the named defendants in the Dutch Litigation or for related entities.

More significantly, as demonstrated by the substantial and significant documentary evidence and detailed information set forth in the Declaration of Tom Einertsen in Opposition to Respondent's Motion to Quash Subpoena, dated June 19, 2012 (the "First Einertsen Declaration"),[3] every one of the seven companies that Chadbourne admits it represents was directly involved in one or more of the fraudulent transactions at issue in the Dutch Litigation. The interrelatedness of those companies, their principals, and these transactions and the irrefutable fact that Chadbourne's fingerprints are all over these transactions – all as described in the First Einertsen Declaration – provides the requisite probable cause to believe that this transactional scheme was fraudulent and that the communications and activities of Chadbourne concerning these multiple transactions involving its multiple clients facilitated that fraud.  In the face of the overwhelming amount of evidence in the First Einertsen Declaration, a reasonable basis exists to suspect the perpetration of this fraud, and Chadbourne cannot hide behind the attorney-client privilege by virtue of the crime-fraud exception, which applies under these circumstances.

The § 1782 Order and the Second Subpoena (like the First Subpoena) were properly issued, Chadbourne's objections are not legally tenable, and this motion to compel should be granted.

---

[3]     The First Einertsen Declaration is annexed as Exhibit A to the Declaration of Tom Einertsen in Support of Petitioners' Motion to Compel, dated July 6, 2012 (the ("Second Einertsen Declaration").

4

## FACTUAL AND PROCEDURAL BACKGROUND

A detailed description of the fraudulent scheme that underlies the claims in the Dutch Litigation is set forth in the First Einertsen Declaration, which was submitted in connection with Okean's opposition to Chadbourne's motion to quash.  See also Okean's Memorandum of Law in Opposition to Respondent's Motion to Quash Subpoena, dated June 19, 2012 ("Okean Opp. Br.") (ECF No. 20) at 3-18.  (A copy of Okean's Opposition Brief is annexed as Exhibit 7 to the Skakel Declaration.)  The Einertsen Declaration also provides the specific information and substantial documentary evidence that serve as the factual predicate for the document requests in both the First and Second Subpoenas.

In particular, the First Einertsen Declaration "connects the dots" with respect to each of the four agreements that are the subject of document requests in and attached to the Second Subpoena (First Einertsen Decl. ¶¶ 26-35; Second Subpoena Exs. 1-3 and 7), each of the special shareholders' meetings that are the subject of document requests and the minutes of which are attached to the Second Subpoena (First Einertsen Decl. ¶¶ 35, 37, 41 and 45; Second Subpoena Exs. 4 and 6), each of the letters and emails that are the subject of document requests in and attached to the Second Subpoena (First Einertsen Decl. ¶¶ 35, 46 and 49-50; Second Subpoena Exs. 5 and 8-10), each of the three related board appointments of Igor Shaposhnikov that are the subject of a document request (First Einertsen Decl. ¶¶ 45-46), the specific telephone conversation on March 22, 2010 in which Konstantin Konstantinov (a partner in Chadbourne's Moscow office) participated that is the subject of a document request (Einertsen Decl. ¶ 50), and each of the individuals whose communications with Chadbourne concerning the salient transactions are the subject of a document request.

The Second Subpoena seeks discovery of the specific transactions, corporate acts, and related occurrences that in effect set the stage for the fraudulent scheme that is the subject of

DOCSNY-508799v1

Okean's claims in the Dutch Litigation.   The Second Subpoena seeks this discovery of Chadbourne because – as reflected in the documentary evidence annexed to the First Einertsen Declaration and the Second Subpoena – Chadbourne represents virtually all of the entities involved in the salient transactions and related occurrences and its attorneys (principally from its Moscow office) were specifically involved.

In the face of Chadbourne's Objections to Second Subpoena as well as the absence of any motion to quash that Second Subpoena, Okean has brought on this motion to compel.   To avoid duplication and to foster judicial economy, Okean has made its motion to compel returnable on the same date that Chadbourne's motion to quash will be heard by this Court.

## ARGUMENT

### I.   CHADBOURNE'S BLANKET OBJECTION TO EVERY DOCUMENT REQUEST IN THE SECOND SUBPOENA AND WHOLESALE REFUSAL TO PRODUCE OR LOG ANY DOCUMENT WHATSOEVER IS UNWARRANTED

As it did with respect to the First Subpoena, Chadbourne has asserted the same blanket objection to all of the document requests in the Second Subpoena, refused to produce even a single document, and failed to prepare any privilege log whatsoever.   Because Chadbourne took the position that all documents responsive to the Second Subpoena (like those responsive to the First Subpoena) are privileged, Okean was stymied in its efforts to engage in any meaningful meet and confer.   Skakel Decl. ¶ 12.

Chadbourne's blanket objection as to each of the sixteen document requests consists of four purported grounds:

(1)   The request is "vague, overbroad, unduly burdensome, [and] not reasonably calculated to lead to the discovery of admissible evidence";

(2)   The request calls for the production of documents that "could be obtained from some other source that is more convenient, less burdensome, or less expensive including, for example, from one or more of the parties named in the Dutch Litigation commenced by Petitioners";

DOCSNY-508799v1

> (3)     The request calls for the production of documents that "are located outside
>         of the United States"; and
>
> (4)     The request calls for the production of documents that "are protected from
>         disclosure by the attorney-client privilege, work product doctrine or other
>         applicable privilege or immunity."

Skakel Decl. Ex. 5.

Chadbourne's refusal to produce *any* document in reliance on its blanket objection to *each and every request* in the Second Subpoena as "vague, overbroad, and unduly burdensome" is unfounded and wholly insufficient. Under the federal discovery rules,[4] a party objecting to a discovery request on the grounds that the information sought is irrelevant and the document requests are overly broad or burdensome, must do more than "'simply inton[e] [the] familiar litany' that [requests] are burdensome, oppressive or overly broad." Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). The resisting party "must show *specifically* how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden" Id. at 42 (emphasis added) (citations omitted).[5]

---

[4]     District courts apply federal discovery rules to Section 1782 discovery requests. See S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789 (stating that discovery sought under Section 1782 must, in the absence of a contrary order by the district court, comply with Rule 26 and the other rules governing discovery in federal courts); Malev Hungarian Airlines v. United Techs. Int'l Inc., 964 F.2d 97, 102 (2d Cir.), cert. denied, 506 U.S. 861 (1992) (noting that the proper scope of the discovery sought under Section 1782, like all federal discovery, is governed by Federal Rule 26(b)). See also In re Bayer AG, 146 F.3d 188, 195 (3d Cir.1998) (reference in 28 U.S.C. § 1782 to Federal Rules of Civil Procedure suggests that, under ordinary circumstances, standards for discovery under those Rules should also apply when discovery is sought under Section 1782).

[5]     Furthermore, this Court has held that "relevance is defined extremely broadly for the purpose of determining whether to grant a request for discovery in aid of a foreign proceeding." In re Application Pursuant to 28 U.S.C. Section 1782, 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)) (for purposes of

7

Chadbourne has altogether failed to make this showing, choosing instead to take cover behind the remaining three asserted grounds for its objections – the same three grounds that are the subject of Chadbourne's motion to quash the First Subpoena and vacate the § 1782 Order.

**II.     THE THREE GROUNDS CHADBOURNE ASSERTS IN REFUSING TO COMPLY WITH THE SECOND SUBPOENA – THE ALLEGED AVAILABILITY OF THE DOCUMENTS IN THE DUTCH LITIGATION, THE LOCATION OF THE DOCUMENTS, AND THE PRIVILEGED NATURE OF THE DOCUMENTS – ARE UNFOUNDED FOR THE SAME REASONS THAT SUCH GROUNDS DO NOT SUPPORT CHADBOURNE'S MOTION TO QUASH THE FIRST SUBPOENA**

Because Chadbourne's Objections to the First and Second Subpoenas are substantively identical and because Chadbourne's motion to quash the First Subpoena is predicated on those substantively identical grounds, it is not surprising that Okean's opposition to Chadbourne's motion to quash addresses the very legal issues salient to the instant motion to compel.  In light of the overwhelming overlap between Chadbourne's motion to quash the First Subpoena and vacate the § 1782 Order and Okean's motion to compel compliance with the Second Subpoena, and to avoid burdening the Court with wholly duplicative argument, Okean has annexed as Exhibit 7 to the Skakel Declaration its Opposition Brief submitted in connection with Chadbourne's motion to quash and will refer the Court to that Opposition Brief with respect to the overlapping legal issues.  Okean will also address points specific to the document requests in the Second Subpoena.

**A.     Chadbourne Does Not Dispute That Okean's Application Meets All The Statutory Requirements For Discovery Pursuant To 28 U.S.C. § 1782.**

Neither Chadbourne's Objections to the First and Second Subpoenas nor its motion to quash and to vacate object to the Subpoenas on the grounds that the Section 1782 statutory

---

discovery, relevance as it relates to the subject matter of an action is broadly construed "'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case'").

DOCSNY-508799v1

requirements were not satisfied.  In this regard, and as fully set forth in Okean's Opposition

Brief, the § 1782 Order was properly issued where (1) as claimants in a foreign proceeding

seeking discovery from a non-party to that proceeding, Okean is an "interested party" for

Section 1782 purposes; (2) the material that Okean seeks is to be used in a foreign tribunal,

specifically, the District Court of Amsterdam in the Netherlands; and (3) the party to whom the

request was made – here, Chadbourne – resides in the district in which this Court sits.  Okean's

application thus met all of the statutory prerequisites for discovery pursuant to 28 U.S.C. § 1782.

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).  See Okean Opp. Br. 18-20.

### B.   Section 1782's Non-Statutory Considerations All Weigh In Favor Of Allowing Okean's Discovery Of Chadbourne Sought In The Second Subpoena.

Just as explained in Okean's Opposition Brief regarding the § 1782 Order and the First

Subpoena, having in essence conceded that the § 1782 Order meets the statutory prerequisites,

Chadbourne's objections to the § 1782 Order and the Second Subpoena are based solely on

Section 1782's discretionary factors.  Where, as here, the statutory requirements of Section 1782

have been met, it remains within the court's discretion as to whether to order the requested

disclosure, taking into account the statute's twin aims.  See Intel, 542 U.S. at 255.  In exercising

this discretion, the district court is to consider:  (i) whether the person from whom discovery is

sought is a participant in the relevant foreign proceeding who is subject to discovery in that

jurisdiction; (ii) the nature of the foreign tribunal, the character of the proceedings underway, and

the receptivity of the foreign government, court or agency to federal judicial-court assistance;

(iii) whether the application conceals an attempt to circumvent foreign proof-gathering limits or

other policies of a foreign country or the United States; and (iv) whether the discovery sought is

9

unduly intrusive or burdensome. Id. at 264-65.[6] In exercising its discretion with respect to

Section 1782 applications, the Second Circuit has emphasized the twin aims of the statute:

"'"providing efficient means of assistance to participants in international litigation in our federal

courts and encouraging foreign countries by example to provide similar means of assistance to

our courts.'"" In re Application of Bank of Cyprus Pub. Co. Ltd., No. 10 Misc. 23, 2011 U.S.

Dist. LEXIS 6082, at *5-6 (S.D.N.Y. Jan. 21, 2011) (quoting In re Application of

Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997)). The § 1782 Order and the Second

Subpoena issued pursuant to that Order are wholly consistent with and in furtherance of the

statute's "twin aims," such that Okean's motion to compel should be granted.

**1.     Contrary To Chadbourne's Blanket Objection To The Second
         Subpoena, The Discovery Sought Is *Not* Available From Those
         Who Are Parties To The Dutch Litigation.**

With respect to the first discretionary factor, Chadbourne does not dispute that it is not a

participant in the Dutch Litigation. Courts have held that the necessity of Section 1782

discovery is particularly apparent when the entity from whom discovery is sought is not a

participant in the corresponding foreign litigation or proceeding. See Intel, 542 U.S. at 264.

Nor, contrary to Chadbourne's Objections to the First and Second Subpoenas and

Chadbourne's motion to quash, is the discovery sought by the Second Subpoena "accessible" to

Okean in the Dutch Litigation. Rather, as explained in the Declaration of Robert van Galen in

Opposition to Respondent's Motion to Quash, dated June 18, 2012 (the "van Galen Decl.") (ECF

No. 17),[7] the discovery that Okean seeks by means of the § 1782 Order and Subpoenas cannot be

obtained in the Dutch Litigation from the Dutch court, as Dutch procedural law provides for no

---

[6]     Chadbourne's Objections to the First and Second Subpoenas do not take issue with the
second or third discretionary factors. See Okean Opp. Br. 27-28.

[7]     A copy of the van Galen Declaration is annexed to the Skakel Declaration as Exhibit 6.

DOCSNY-508799v1

general exchange of documents or discovery between parties.  van Galen Decl. ¶ 6.  Likewise, and as explained in the van Galen Declaration (¶¶ 6-7) and Okean's Opposition Brief (pp. 21-22), the statutory prerequisites of the very limited discovery rule – Article 843(a) of the Dutch Code of Civil Procedure – would preclude Okean from obtaining the relevant discovery that it seeks under the Second Subpoena.

Additionally, there is no obligation under Section 1782 for Okean to seek the discovery first from the Dutch court.  (Nor is there one under Dutch law.)  Indeed, separate and apart from the fact that the Dutch courts are not empowered to order the discovery that Okean seeks (see van Galen Declaration), the Second Circuit has rejected the notion that petitioners must attempt to obtain the documents they seek within the foreign litigation before seeking Section 1782 discovery:

> [R]equiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history. It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation. Additionally, it would undermine the policy of prompting foreign courts to act similarly based on our own generous example.

Malev Hungarian Airlines, 964 F.2d at 100.  See also Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1098 (2d Cir. 1995) ("Relying on the plain language of the statute, this Court has also refused to engraft a 'quasi-exhaustion requirement' onto Section 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court." (quoting Malev Hungarian Airlines, 964 F.2d at 100)).

### 2.   The Discovery Sought Is Neither Unduly Intrusive Nor Burdensome.

Chadbourne's remaining grounds for its non-compliance with the Second Subpoena – i.e., the alleged location of the documents outside of New York and the purported protection of

11

the attorney-client privilege – fail to establish the requisite undue intrusion and burden on Chadbourne under either Section 1782's fourth discretionary factor or the federal discovery rules.

        **(a)**      **The Requested Documents Are Accessible and Present No Obstacle to Discovery.**

As it did in its motion to quash the First Subpoena, Chadbourne objects to Okean's Second Subpoena on the grounds that the documents sought are, according to Chadbourne, located outside of the United States. As described in Okean's Opposition Brief, Chadbourne's argument is based on a misapprehension of the law in this Circuit and a crafty (and apparently selective) presentation of the facts. See Okean Opp. Br. 26-33.

As demonstrated in Okean's Opposition Brief, the declarations that Chadbourne submitted in connection with its motion to quash cleverly fail to address the electronically-stored information ("ESI") – email, Word documents, pdf's, and other computerized information – that has in many respects eclipsed "hard copy" documents in a law firm's performance of services to clients. This is a significant and serious omission given the impact on the credibility of Chadbourne's argument as to "location" of documents responsive to the Subpoenas – which expressly call for hard copy *and* electronic documents and ESI – and the purported burden of production. Chadbourne's silence speaks volumes as to fundamental facts such as shared servers on which the firm's ESI is stored, enabling the attorneys of this global firm to access Chadbourne's computerized and electronic files. Chadbourne – a self-avowed "single, integrated partnership, rather than a U.S.-based firm with a network of overseas offices" – advances no colorable reason as to why responsive ESI is not electronically accessible from a Chadbourne computer in its New York office or could not simply be downloaded onto a CD or otherwise electronically transmitted to New York City in compliance with the § 1782 Order. And this is so

12

whether the responsive ESI has been generated or is ESI of a Chadbourne attorney in Kiev (such as Ms. Putintseva) or Moscow (such as Mr. Konstantinov and Ms. Kelina). Surely a practice commonplace to the regular business affairs of Chadbourne's "single, integrated partnership" cannot at the same time be "unduly burdensome" when ordered by this Court.

Likewise, Okean's Opposition Brief establishes that, just as the factual predicate for Chadbourne's geographic location is fatally deficient (i.e., in altogether ignoring all of Chadbourne's ESI and electronic and computerized documents and files), its purported case law support is also insufficient. Okean Opp. Br. 27-33. And, whether the custodian of the responsive ESI is a Chadbourne attorney in New York, Kiev or Moscow, the holdings and reasoning of the cases cited in Okean's Opposition Brief all point to the conclusion that Chadbourne's geographic location objection should be rejected by this Court. See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) ("Section 1782 requires only that the party from whom discovery is sought be 'found' here; not that the documents be found here. . . . For this Court to read an implicit document-locale requirement into § 1782 would be squarely at odds with the Supreme Court's instruction that § 1782 should not be construed to include requirements that are not plainly provided for in the text of the statute.") (emphasis added); In re Application of Eli Lilly & Co., No. 3:09MC296 (AWT), 2010 U.S. Dist. LEXIS 59121, at *12-13 (D. Conn. June 15, 2010) (following the analysis and holding of Gemeinshcaftspraxis, rejecting the respondent's reliance on In re Application of Godfrey, 526 F. Supp. 2d 417 (S.D.N.Y. 2007), and ordering the production of the respondent's documents located in Canada and China); Minatec Fin. S.a.r.l. v. SI Group, Inc., Civ. No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802, at *13 n.8 (N.D.N.Y. Aug.

13

18, 2008) (stating that "the only nexus necessary for us to be able to compel production of all documents" is finding the party from whom discovery is sought within the court's district).

**(b)      No "Legally Applicable Privilege" Precludes the Requested Discovery.**

Finally, and as it did in its motion to quash the First Subpoena, Chadbourne has asserted an across-the board privilege objection.  Under Chadbourne's blanket approach, *every* document and *all* information responsive to the Subpoenas reflect the rendering of "legal advice."  As demonstrated in Okean's Opposition Brief, Chadbourne's absolutist argument is not credible or consistent with the practice of law.  See Okean Opp. Br. 35-38.  Moreover, the documentary evidence already available to Okean and provided in the First Einertsen Declaration reveals that Konstantin Konstantinov (a partner in Chadbourne's Moscow office) and Anna Kelina (an associate in Chadbourne's Moscow office) acted on behalf of Wadan Holding and Templestowe prior to the transfer of the Shares from Okean to Blakur.  In particular, these Chadbourne attorneys played an active role in the appointment to the boards of WYGAS of Igor Shaposhnikov (see First Einertsen Decl. ¶ 50) and worked closely with Mr. Shaposhnikov, who authorized the transfer of the Shares out of Okean, and put in place the arrangements by which the assignees of the Loans, Poizanter and Fradomna, received security rights over assets owned by Wadan Yards worth many millions of dollars (in return for their combined investment of a mere USD 200).  Id.; id. Exs. 33 and 34 (see also Second Subpoena Exs. 9 and 10).

Likewise, Okean's Opposition Brief established as legally untenable Chadbourne's categorical assertion of the attorney-client privilege – an across-the-board assertion that ignores the depth and breadth of the detailed information set forth in the First Einertsen Declaration, which provides overwhelming documentary evidence and other specific facts that establish not only the underlying fraud, but Chadbourne's involvement on behalf of virtually every one of the

14

entities who were the instruments of that fraud. Okean Opp. Br. 4-18. The Second Einertsen Declaration provides even more factual information connecting Chadbourne to the wrongdoer defendant companies – specifically, that two New York-based Chadbourne attorneys are authorized signatories for bank accounts held by Olympus – the named defendant who ended up with Okean's valuable shares following a series of fraudulent transfers and who recently sold a 50% interest to co-defendant Smart-Holding. Second Einertsen Decl. ¶¶ 5-7.

Thus, as discussed at length in the First Einertsen Declarations and highlighted in Okean's Opposition Brief and here, there is substantial documentary and related evidence on which a prudent person could rely to suspect the perpetration of a fraud, and that the communications that Okean seeks in the Second Subpoena were in furtherance of that fraud. Therefore, even if some of the communications in question would otherwise be protected by the attorney-client privilege, those communications fall squarely within the crime-fraud exception and should be produced in connection with this Section 1782 discovery request. See Okean Opp. Br. 38-43.

### (c)   Chadbourne Is Obligated To Produce a Privilege Log Along With Documents Responsive To the Second Subpoena.

Finally, as with the First Subpoena and as set forth in Okean's Opposition Brief, even if some documents responsive to the Second Subpoena are arguably privileged and even if that privilege is maintained (despite the compelling evidence supporting the crime-fraud exception – which eventuality seems unlikely and untenable), that does not warrant Chadbourne's across-the-board blanket objection to all of the carefully tailored requests in the Second Subpoena or its wholesale refusal to produce any document or provide any privilege log. See Okean Opp. Br. 43-45.

There is a well-established procedure for the invocation of alleged privileges in response to subpoenas and other demands for tangible

15

DOCSNY-508799v1

evidence.  Those in possession, custody or control of allegedly privileged documents called for by subpoenas and document requests are obliged to enumerate the documents as to which they claim privilege and assert their privilege claims in the manner prescribed by both local and federal rules. In most circumstances, a party cannot rely on "mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed."

In re Application of Chevron Corp., 749 F. Supp. 2d 141, 166 (S.D.N.Y. 2010) (citing Fed. R. Civ. P. 26(b)(5)(A); S.D.N.Y. Civ. R. 26.2; von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987)).  As in Chevron, Chadbourne – as the recipient of a Section 1782 Subpoena – is not relieved of its obligation to provide a privilege log, particularly where the requisite probable cause exists that the responsive documents come within the crime-fraud exception.  Chevron, 749 F. Supp. 2d at 167.

## CONCLUSION

For the foregoing reasons as well as those in Okean's Opposition Brief, Okean respectfully requests that this Court uphold its grant of Okean's application and the § 1782 Order directing Chadbourne to produce documents and grant Okean's motion to compel production of the discovery sought in the Second Subpoena.

Dated: New York, New York
      July 6, 2012

Respectfully submitted,

DICKSTEIN SHAPIRO LLP

By:     s/Deborah A. Skakel
         Deborah A. Skakel
         1633 Broadway
         New York, New York  10019-6708
         Telephone: (212) 277-6500
         Facsimile: (212) 277-6501
         skakeld@dicksteinshapiro.com

*Attorneys for Petitioners Okean B.V. and Logistic Solution International Limited*

16