UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application Pursuant to 28 U.S.C. § 1782 of OKEAN B.V. and LOGISTIC SOLUTION INTERNATIONAL LIMITED,<br><br>         Petitioners,<br><br>   – to take discovery of –<br><br>CHADBOURNE & PARKE LLP,<br><br>         Respondent. | Misc. No. 12-00104 (Part 1)<br>(Engelmayer, J.)<br><br>**ORAL ARGUMENT<br>REQUESTED** |

# RESPONDENT'S MEMORANDUM OF LAW IN
# OPPOSITION TO PETITIONERS' MOTION TO COMPEL

                CHADBOURNE & PARKE LLP
                Respondent *Pro Se*
                30 Rockefeller Plaza
                New York, New York  10112
                Tel.:  (212) 408-5100
                Fax:  (212) 541-5369

Thomas J. Hall
Robert Kirby
Erin Shinneman

  Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................4

    I.    PETITIONERS FAIL TO MEET THEIR BURDEN TO SHOW THAT THE SECOND SUBPOENA SEEKS DOCUMENTS "FOR USE" IN THE DUTCH LITIGATION ......................................4

    II.   PETITIONERS' LATEST UNFOUNDED ACCUSATIONS FAIL TO REBUT ANY OF THE THREE OTHER INDEPENDENT GROUNDS FOR DENIAL OF PETITIONERS' MOTION TO COMPEL .................8

CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................................11

*Grand River Enters. Six Nations, Ltd. v. King*,
   2009 U.S. Dist. LEXIS 2045 (S.D.N.Y. Jan. 9, 2009)............................................................10

*In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007)..................................................................3, 4

*In re Kolomoisky*, 2006 U.S. Dist. LEXIS 58591 (S.D.N.Y. Aug. 18, 2006) .................................4

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004) .................................4

*United States v. Jacobs*, 117 F.3d 82 (2d Cir. 1997) ....................................................................10

**Statutes and Rules**

28 U.S.C. § 1782............................................................................................................... *passim*

Fed. R. Civ. P. 45..........................................................................................................................11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application Pursuant to 28 U.S.C. § 1782 of OKEAN B.V. and LOGISTIC SOLUTION INTERNATIONAL LIMITED,<br><br>                              Petitioners,<br><br>– to take discovery of –<br><br>CHADBOURNE & PARKE LLP,<br><br>                              Respondent. | Misc. No. 12-00104 (Part 1)<br>(Engelmayer, J.)<br><br>**ORAL ARGUMENT<br>REQUESTED** |

## RESPONDENT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PETITIONERS' MOTION TO COMPEL

Respondent Chadbourne & Parke LLP respectfully submits this memorandum of law, together with the Declaration of Andrew A. Giaccia in Opposition to Petitioners' Motion to Compel dated July 20, 2012 (the "Giaccia Decl."), and the Declaration of Thomas J. McCormack in Opposition to Petitioners' Motion to Compel dated July 19, 2012 (the "McCormack Decl."), in opposition to the motion to compel filed by Petitioners on July 6, 2012.[1]

### PRELIMINARY STATEMENT

In moving to compel, Petitioners feign outrage that Chadbourne "refused to produce even a single document, and failed to prepare any privilege log whatsoever" in response to the Second Subpoena. Petitioners' Mot. at 2, 6.[2] Petitioners appear to overlook, however, that they issued

---

[1] All capitalized terms not defined herein are as defined in the Memorandum of Law in Support of Respondent's Motion to Quash Subpoena dated May 8, 2012 ("Mot."). Docket No. 10.

[2] Citations to "Petitioners' Mot." refer to the Memorandum of Law in Support of Petitioners' Motion to Compel dated July 6, 2012. Docket No. 27.

the Second Subpoena after Chadbourne moved to vacate the *Ex Parte* Order pursuant to which that subpoena was purportedly issued. Therefore, it should have come as no surprise to Petitioners that Chadbourne "objects to the [Second] Subpoena in its entirety as improper under 28 U.S.C. § 1782." Skakel Decl., Exhibit 5.[3]

Petitioners' Second Subpoena suffers from – and indeed exacerbates – the same three fatal defects that plague the first Subpoena and Petitioners' application for discovery under Section 1782 generally: (1) Section 1782 does not authorize discovery of documents located outside the United States and documents responsive to the Second Subpoena are located outside the United States; (2) any non-privileged documents responsive to the Second Subpoena would also (or exclusively) be in the possession of defendants in the Dutch Litigation (or Petitioners themselves) and, therefore, are already within the jurisdiction of the foreign tribunal; and (3) compliance with the Second Subpoena's unreasonable demands would impose an undue intrusion and burden on Chadbourne, particularly given that all or nearly all of the documents responsive to Petitioners' requests would be protected by the attorney-client privilege and/or the work-product doctrine. Mot. at 9-18; Reply at 3-20.[4] Petitioners' motion to compel offers little that is new on the facts or the law, instead resorting to repetition of assertions previously shown to be insufficient to rebut even one of these three grounds to vacate the *Ex Parte* Order.

For example, Petitioners continue to insist – incorrectly – that "Chadbourne ignores controlling precedent and relies on dicta in arguing that Section 1782 does not allow discovery of

---

[3]  Citations to "Skakel Decl." refer to the Declaration of Deborah A. Skakel in Support of Petitioners' Motion to Compel dated July 6, 2012. Docket No. 26.

[4]  Citations to "Reply" refer to the Reply in Further Support of Respondent's Motion to Quash Subpoena dated July 6, 2012. Docket No. 21.

documents located outside the United States."  Petitioners' Mot. at 2.  To the contrary, the minority view of a sister district court is not "controlling precedent" and the conclusion of *In re Godfrey* that "for purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States," 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007), cannot be construed as *dicta*.  Reply at 4-6.  Petitioners are equally stubborn in maintaining that "the discovery that Okean seeks . . . cannot be obtained in the Dutch Litigation from the Dutch Court," notwithstanding that such documents would be in the possession of parties to the Dutch Litigation.  Petitioners' Mot. at 10.  Even Petitioners' Dutch Litigation counsel contradicted Petitioners' assertion that it would be impossible to seek discovery from parties to the Dutch Litigation.  Reply at 9-13.  And of course, Petitioners have not even *attempted* to do so.

What little that is new in Petitioners' motion to compel in no way undermines Chadbourne's objections to the Second Subpoena or lessens the need to vacate the *Ex Parte* Order.  Petitioners submit a second declaration from Okean Director Tom Einertsen who asserts – citing some unnamed person's purported "investigation" – that two members of Chadbourne's Management Committee acted "as authorized representatives of Olympus" outside "the course of a normal attorney-client relationship."  Second Einertsen Decl. ¶ 7.[5]  Not even Petitioners seem to know what they are trying to insinuate by these allegations.  In any event, declarations submitted by the attorneys in question definitively refute Petitioners' speculative and unsupported assertions.

---

[5]   Citations to "Second Einertsen Decl." refer to the Declaration of Tom Einertsen in Support of Petitioners' Motion to Compel dated July 6, 2012.  Docket No. 25.

3

Beyond aggravating the three fatal defects that it shares with the Subpoena and Petitioners' Section 1782 application, the Second Subpoena is also plagued by yet another. Specifically, the Second Subpoena requests the production of documents concerning a multitude of individuals, entities, agreements and events that were not mentioned either in the Writ in the Dutch Litigation or in Petitioners' Section 1782 application. Many of those requests concern events that occurred a year or more before Okean's allegedly "fraudulent" execution of the Share Sale and Purchase Agreement and Loan Facility Assignment Agreements in 2010. On their face, such requests violate the statutory requirement that any discovery sought under Section 1782 must be "for use" in the foreign proceeding and exceed the scope of the authority granted by the *Ex Parte* Order. Petitioners have utterly failed to meet their burden of showing otherwise.

For all these reasons, the Second Subpoena exceeds the bounds of 28 U.S.C. § 1782 and Petitioners' motion to compel should be denied in its entirety.

## ARGUMENT

### I

### PETITIONERS FAIL TO MEET THEIR BURDEN TO SHOW THAT THE SECOND SUBPOENA SEEKS DOCUMENTS "FOR USE" IN THE DUTCH LITIGATION

In addition to the defects it shares with the Subpoena, the Petitioners' Second Subpoena suffers from another fatal flaw. As a prerequisite to further consideration of whether a Section 1782 application should be granted, the Court must first find that three mandatory statutory requirements have been met, including that the discovery sought is "for use in a proceeding before a foreign tribunal." *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quotation marks omitted). The Petitioners have the burden of proof concerning these statutory requirements. *See Godfrey*, 526 F. Supp. 2d at 419; *In re Kolomoisky*, 2006 U.S. Dist. LEXIS 58591, at *6-10 (S.D.N.Y. Aug. 18, 2006) (concluding that "Petitioner

4

has not met the threshold statutory requirements under Section 1782" where "Petitioner provided insufficient evidence for this Court to find that Vekselberg resides in this district").  Petitioners have failed to meet this burden with respect to the Second Subpoena, which demands the production of documents concerning a multitude of individuals, entities, agreements and events that went unmentioned in either the Writ or Petitioners' Section 1782 application and which documents appear highly unlikely to be "for use" in the Dutch Litigation.[6]

Petitioners' Writ alleges that Okean's execution of the Share Sale and Purchase Agreement and Loan Facility Assignment Agreements in 2010 was "fraudulent" and is "voidable on the basis of Section 3:45 of the Dutch Civil Code."  Hall Decl., Exhibit 2(A) ¶¶ 26, 35.[7]  As an initial matter, Petitioners have not even attempted to show how Section 3:45 of the Dutch Civil Code is applicable to agreements concerning the sale of shares in and assignment of loan facilities for a Ukrainian company or, if it is, what elements Petitioners must prove to succeed on their claims, or how the documents sought by the far-ranging demands of the Second Subpoena would be used in the Dutch Litigation to prove those elements.  For that reason alone, Petitioners have failed to meet their burden under Section 1782.

---

[6] For the same reason, Petitioners have also failed to show that each of the demands in the Second Subpoena sufficiently "relat[e] to the issues identified in [their] application," as required by the *Ex Parte* Order.  Skakel Decl., Exhibit 1.  Petitioners' statement that Chadbourne did not previously object "to the Subpoenas on the grounds that the Section 1782 statutory requirements were not satisfied" is incorrect.  Chadbourne objected to the Second Subpoena in part on the specific ground that it "seeks the production of documents which are not for use in or relevant to the subject matter of the claims and defenses in the [Dutch Litigation]."  Skakel Decl., Exhibit 5 at General Objection No. 2.

[7] Citations to "Hall Decl." refer to the Declaration of Thomas J. Hall in Support of Respondent's Motion to Quash Subpoena dated May 8, 2012.  Docket No. 11.

Had they tried, it would appear doubtful at best that Petitioners could have shown that each of the Second Subpoena's 16 individually numbered requests seeks documents "for use" to prove the causes of action asserted in the Dutch Litigation.  Indeed, Petitioners essentially concede that many of those requests seek documents that would be irrelevant to proving their claims under Section 3:45 of the Dutch Civil Code when they assert that the Second Subpoena "seeks discovery of the specific transactions, corporate acts, and related occurrences that *in effect set the stage* for the fraudulent scheme that is the subject of Okean's claims in the Dutch Litigation."  Petitioners' Mot. at 5-6 (emphasis added).

For example, the Second Subpoena demands all "[d]ocuments concerning the negotiation and drafting of, and performance under" a series of agreements allegedly entered into from March 2008 through March 2009 by entities including FLC West Holding S.a.r.l., Templestowe Trading Corporation, Aker Yards Holding AS, Aker Yards Ukraine Holding AS, and Wadan Holding S.a.r.l.  *See* Skakel Decl., Exhibit 4 at Document Request Nos. 2-5.  None of those agreements are even mentioned – let alone alleged to be "fraudulent" – in the Writ.  Petitioners make no attempt to demonstrate how any of those earlier agreements would have any bearing whatsoever on whether Okean's execution of the Share Sale and Purchase Agreement and Loan Facility Assignment Agreements in 2010 should be voided under Section 3:45 of the Dutch Civil Code.  *See* Einertsen Decl. ¶¶ 29-32.[8]

---

[8] Petitioners do not allege that any Chadbourne attorneys provided legal advice or services in connection with any of those agreements or provide any reason to believe that Chadbourne would possess documents responsive to such requests.  *See id*.  It would seem more likely that Mr. Einertsen would possess such documents as he apparently "played a significant role on behalf of Aker Yards in the negotiations" and signed at least one of the referenced agreements.  *See id*. at ¶¶ 29-30 & Exhibit 5.

6

Similarly divorced from the allegations in the Writ is Petitioners' demand for all "[d]ocuments concerning the Extraordinary General Meeting of [Wadan Yards Group AS], held on March 25, 2009."  *See* Skakel Decl., Exhibit 4 at Document Request No. 6.  As provided by Petitioners, the minutes from that shareholders' meeting do not reference the Share Sale and Purchase Agreement or Loan Facility Assignment Agreements, which would not be drafted and executed by Okean until nearly a year later.  Einertsen Decl., Exhibit 11.  Instead, those minutes purport to approve the negotiated termination of employment contracts with certain employees including Petitioners' declarant, Mr. Einertsen, apparently because of the perceived "unsatisfactory performance" of those employees.  *Id*.  While documents responsive to this request in the Second Subpoena might be of interest to Mr. Einertsen, Petitioners utterly fail to show how they could be probative of the causes of action asserted in the Dutch Litigation.[9]

Even further afield is the Second Subpoena's demand for "[a]ll retainer or engagement letters" between Chadbourne and any one or more **of 23 listed individuals and entities** – many of which were mentioned by Petitioners for the first time in the Second Subpoena.  *See* Skakel Decl., Exhibit 4 at Document Request No. 1.  As Petitioners seem to have forgotten, they have not named Chadbourne as a defendant in the Dutch Litigation and Chadbourne was not party to the allegedly fraudulent agreements executed by Okean in 2010.  Petitioners nowhere demonstrate how an engagement letter between Chadbourne and any of those 23 individuals and

---

[9]   Once again, Petitioners fail to provide any indication that Chadbourne would possess documents responsive to this request.  The meeting minutes provided by Petitioners do not mention Chadbourne or purport to reflect the attendance of any Chadbourne attorney.  Einertsen Decl., Exhibit 11.  Indeed, Petitioners would seem better served to ask Mr. Einertsen himself for information concerning the circumstances under which he "decided to leave the company in early 2009" and "reached an agreement with [Wadan Yards Group AS] for leaving the company."  Einertsen Decl. ¶ 31.

7

entities would go to the apparently straightforward issue of whether Okean's execution of the Share Sale and Purchase Agreement and Loan Facility Assignment Agreements is subject to avoidance under Section 3:45 of the Dutch Civil Code.

These examples further demonstrate that the Second Subpoena is an impermissible fishing expedition and granting Petitioners' motion to compel would contravene Section 1782.

II

### PETITIONERS' LATEST UNFOUNDED ACCUSATIONS FAIL TO REBUT ANY OF THE THREE OTHER INDEPENDENT GROUNDS FOR DENIAL OF PETITIONERS' MOTION TO COMPEL

In attempting to respond to the other three grounds for denial of Petitioners' motion to compel, Petitioners rest almost entirely on the same tired arguments set forth in their opposition to Chadbourne's motion to quash. *See* Petitioners' Mot. at 8. Chadbourne has addressed those arguments before and will not repeat itself here.[10] Apparently unable to rebut any of those three grounds on the law or the facts, Petitioners instead resort to more unwarranted speculation aimed at undermining Chadbourne's *prima facie* showing that all or nearly all of the documents sought by Petitioners would be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Perhaps most egregiously, Petitioners assert that "two partners from Chadbourne's New York office . . . have undertaken activities as a business agent on behalf of the named defendants in the Dutch Litigation" and that somehow this unsubstantiated assertion "provides even more factual information connecting Chadbourne to the wrongdoer[s]." Petitioners' Mot. at 4, 15. In support of these assertions, Petitioners offer only Mr. Einertsen's "understanding," based on

---

[10] Chadbourne hereby incorporates by reference and respectfully refers the Court to the papers filed in support of Chadbourne's motion to quash. Docket Nos. 9-13, 21-23.

hearsay information from some unidentified Okean "investigation," that Chadbourne attorneys Andrew Giaccia and Thomas McCormack were allegedly "named as authorized representatives" of multiple Olympus bank accounts.  Second Einertsen Decl. ¶ 5.  Mr. Einertsen does not purport to have personal knowledge of these allegations, and fails to submit a single document to support them.  While Mr. Einertsen admits that he "lacks information about the specific work carried on by Messrs. Giaccia and McCormack," that inconvenient admission does not prevent him from recklessly speculating that those attorneys allegedly acted outside "the course of a normal attorney-client relationship."  *Id*. at ¶ 7.

Messrs. Giaccia and McCormack each attest that they never acted or agreed to act as an "authorized representative" of Olympus or any of its bank accounts, never performed any "work" or other services for Olympus in any capacity, and indeed never had any contact with anyone from Olympus.  Giaccia Decl. ¶¶ 3-4; McCormack Decl. ¶¶ 3-4.  These facts should not surprise Petitioners, as Chadbourne's Ukrainian attorney Anna Putintseva previously explained that no attorneys based in Chadbourne's offices in the United States provided any legal advice or services concerning the transactions challenged in the Writ.  Putintseva Decl. ¶ 6.[11]

Petitioners resort to these baseless accusations to bolster their arguments that some unidentified documents responsive to the Subpoena might not be protected by privilege because they "fall squarely within the crime-fraud exception" or because Chadbourne attorneys supposedly acted as "business agents."  Petitioners' Mot. at 3-4, 14-15.  Petitioners have not succeeded.  First, Mr. Einertsen's vague and unsubstantiated accusations against Messrs. Giaccia

---

[11]  Citations to "Putintseva Decl." refer to the Declaration of Anna V. Putintseva in Support of Respondent's Motion to Quash Subpoena dated May 8, 2012.  Docket No. 12.

9

and McCormack are precisely of the sort that courts in the Second Circuit have uniformly rejected as a basis to invade the attorney-client privilege.  *See United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) (explaining that party invoking crime-fraud exception bears the burden of "demonstrat[ing] that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime"); Mot. at 19-20.  Second, it remains black-letter law that "so long as the predominant purpose of the communication is to obtain or provide legal advice, the privilege is not lost merely because the communication had other, nonlegal purposes."  *See Grand River Enters. Six Nations, Ltd. v. King*, 2009 U.S. Dist. LEXIS 2045, at *54 (S.D.N.Y. Jan. 9, 2009); Mot. at 16; Reply at 15-16.  Ms. Putintseva made indisputably clear that Chadbourne was retained to provide legal services, most notably the drafting of contracts, and did not provide business advice.  Putintseva Decl. ¶¶ 2-6.[12]

Moreover, as Chadbourne has explained before, Petitioners' arguments are ultimately beside the point for purposes of this Court's adjudication of the pending motions.  Even assuming *arguendo* that Chadbourne had some responsive documents in its possession that might not be protected by privilege, that fact would not at all lessen the extraordinary intrusion and burden on Chadbourne if it were required to comb the files of its Ukraine office for any hypothetically non-privileged documents responsive to Petitioners' 37 (and counting) individually numbered

---

[12]   For the same reasons, Petitioners' assertion that two attorneys based in Chadbourne's Moscow office "played an active role in the appointment to the board[] of [Wadan Yards Group AS] of Igor Shaposhnikov" and "worked closely with Mr. Shaposhnikov" are also unavailing.  Petitioners Mot. at 14.  Petitioners' suggestion that an attorney's attendance at a shareholders' meeting is somehow inconsistent with the provision of legal advice would effectively render the attorney-client privilege a nullity for many clients of corporate attorneys.

document requests relating to at least 23 alleged Chadbourne clients.  Nor could Petitioners' arguments concerning privilege change the reality that Petitioners seek the production of documents located outside the United States and beyond the reach of Section 1782 that should instead – or at least in the first instance – be sought from the parties to the Dutch Litigation.

## CONCLUSION

For the foregoing reasons and those set forth in the papers in support of its motion to quash, Chadbourne respectfully requests that this Court enter an order denying Petitioners' motion to compel in its entirety, awarding Chadbourne its costs and attorneys' fees in opposing this motion and granting such other and further relief as this Court may deem just and proper.  In the alternative, if the Court were to grant Petitioners' motion to compel in whole or in part, the Court should order that any production by Chadbourne be contingent on Petitioners' advance payment of Chadbourne's reasonable costs and expenses for collecting, translating, reviewing and producing such documents, including for the significant amount of attorney time that would necessarily be expended by Chadbourne.[13]

---

[13] *See Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 435 (S.D.N.Y. 2011) ("[R]ecognizing that producing the requested [Section 1782] discovery will likely be costly and burdensome, the Court orders petitioner to bear 100% of the costs of this discovery."); Fed. R. Civ. P. 45(c)(2)(B)(ii) (any order compelling a respondent to comply with a subpoena "must protect" that respondent "from significant expense resulting from compliance").

Dated:   July 20, 2012

                                      CHADBOURNE & PARKE LLP

                        By      */s/ Thomas J. Hall*
                                        Thomas J. Hall
                                  A Member of the Firm
                          Respondent *Pro Se*
                          30 Rockefeller Plaza
                          New York, New York  10112
                          Tel.:  (212) 408-5100
                          Fax:  (212) 541-5369
                          *thall@chadbourne.com*

Thomas J. Hall
Robert Kirby
Erin Shinneman

      Of Counsel

12