UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application Pursuant to 28 U.S.C. § 1782 of OKEAN B.V. and LOGISTIC SOLUTION INTERNATIONAL LIMITED,<br><br>Petitioners,<br><br>– to take discovery of –<br><br>CHADBOURNE & PARKE LLP,<br><br>Respondent. | Misc. No. 12-00104 (Part 1)<br>ECF Case<br>(Judge Paul A. Engelmayer) |

**PETITIONERS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO COMPEL**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 277-6500
Fax: (212) 277-6501

*Attorneys for Petitioners Okean B.V.
and Logistic Solution International Limited*

## **TABLE OF CONTENTS**

                                                        Page

TABLE OF AUTHORITIES .................................................................................................... ii

Preliminary Statement ..................................................................................................................1

Argument .....................................................................................................................................2

I.      THE DISCOVERY OKEAN SEEKS PURSUANT TO THE SECOND SUBPOENA IS "FOR USE" IN A FOREIGN TRIBUNAL ..................................................................2

II.     CHADBOURNE CONTINUES TO MISAPPREHEND THE HOLDING OF GODFREY AND THE SO-CALLED "MINORITY VIEW" REGARDING THE LOCATION OF REQUESTED DOCUMENTS (AS OPPOSED TO SUBPOENAED PERSONS)..................................................................................................................6

III.    CHADBOURNE ALSO MISAPPREHENDS THE VERY LIMITED DUTCH DISCOVERY RULE AND CONTINUES TO IGNORE THE SECOND CIRCUIT'S REJECTION OF A "QUASI-EXHAUSTION REQUIREMENT"......................................7

IV.    OKEAN HAS MADE THE REQUISITE SHOWING THAT THE ATTORNEY-CLIENT PRIVILEGE DOES NOT PRECLUDE DISCOVERY OF DOCUMENTS RESPONSIVE TO THE SECTION 1782 SUBPOENAS ......................................................9

Conclusion ...................................................................................................................................9

**TABLE OF AUTHORITIES**

CASES                                                                                                    Page(s)

Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ........................................................................... 5

Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095 (2d Cir. 1995) ................................... 8

In re Application of Eli Lilly & Co., No. 3:09MC296 (AWT),
    2010 U.S. Dist. LEXIS 59121 (D. Conn. June 15, 2010) ............................................. 7

In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSJ),
    2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .............................................................. 6

In re Application of Grupo Qumma, No. M 8-85, 2005 WL 937486
    (S.D.N.Y. Apr. 22, 2005) ............................................................................................. 5

In re Godfrey, 526 F. Supp. 2d 417 (S.D.N.Y. 2007) ............................................... 5, 6, 7

In re Kolomoisky, No. M19-116, 2006 U.S. Dist. LEXIS 58591
    (S.D.N.Y. Aug. 18, 2006) ............................................................................................ 6

In re OOO Promnefstroy, No. M 19-99, 2009 U.S. Dist. LEXIS 98610
    (S.D.N.Y. Oct. 15, 2009) ............................................................................................. 8

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) .................................. 4

Malev Hungarian Airlines v. United Techs. Int'l Inc., 964 F.2d 97 (2d Cir.),
    cert. denied, 506 U.S. 861 (1992) ................................................................................ 8

Minatec Fin. S.a.r.l. v. SI Group, Inc., Civ. No. 1:08-CV-269,
    2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008) ........................................... 7

Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79 (2d Cir. 2004) .................... 5

STATUTES

28 U.S.C. § 1782(a) ........................................................................................................... 4

Petitioners Okean B.V. and Logistic Solution International Limited (together, "Okean") respectfully submit this memorandum of law in further support of their motion for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") and Rule 37(a) of the Federal Rules of Civil Procedure compelling Chadbourne & Parke LLP ("Chadbourne") to produce documents in compliance with the Subpoena to Produce Documents, Information, or Objects, dated June 6, 2012 (the "Second Subpoena").

**Preliminary Statement**

In opposing Okean's motion to compel compliance with the Second Subpoena, Chadbourne continues on the same path of rewriting Section 1782 and misapprehending the apposite case law as it started down with its Motion to Quash the First Subpoena.[1] Chadbourne's arguments against the Subpoenas (including its new objection based on Section 1782's "for use" provision) are unavailing.

- Chadbourne wrongly rewrites Section 1782's express statutory requirement that the subpoenaed discovery "be used in a foreign tribunal" to require Okean to show how specific requested documents will successfully prove each of the elements of Okean's claims in the pending litigation in the District Court of Amsterdam in the Netherlands (the "Dutch Litigation").

- Chadbourne persistently and erroneously contends that Judge Barbara Jones's Section 1782 decision on the witness vs. document location issue is "the minority view of a sister district court" – ignoring those cases in this Circuit that have followed Judge Jones's analysis based on the plain language of Section 1782.

- Chadbourne attempts to rewrite Section 1782 and the applicable Dutch discovery rule in claiming that Okean is not only able – but must attempt –

---

[1]   In its Memorandum of Law in Opposition to Petitioners' Motion to Compel, dated July 20, 2012 (ECF No. 29) ("Chadbourne Opp. Br."), Chadbourne incorporates by reference its papers filed in support of its Motion to Quash (ECF Nos. 9-13, 21-23).  In turn, Petitioners incorporate by reference and respectfully refer the Court to its papers in opposition to Chadbourne's Motion to Quash (ECF Nos. 17, 18, 20).

> to obtain from the defendants in the Dutch Litigation the same discovery sought in the Subpoenas.

- Chadbourne's myopic view of the role of its Kiev and Moscow attorneys is not bourne out by the breadth and depth of their involvement in events and transactions that are overwhelmingly interconnected with the fraudulent scheme that is the subject of the Dutch Litigation (and potential additional litigation).

## Argument

### I. THE DISCOVERY OKEAN SEEKS PURSUANT TO THE SECOND SUBPOENA IS "FOR USE" IN A FOREIGN TRIBUNAL

Chadbourne argues that Okean's Second Subpoena fails to meet the statutory requirements of Section 1782, contending that the documents Okean seeks pursuant to that Subpoena are not "for use" in the Dutch Litigation.[2] Chadbourne's argument is legally and factually untenable.

Initially, the procedural and factual background of this matter establishes that documents requested by the Second Subpoena are most definitely being sought "for use" in the ongoing Dutch Litigation. Significantly, the person most knowledgeable about what evidence is relevant to – and has been sought to enable the prosecution of – Okean's claims in the Dutch Litigation is the attorney responsible for that case, Robert van Galen. And Mr. van Galen has unequivocally confirmed that he "fully intend[s] to use the discovery provided in response to both of the subpoenas in the Dutch Litigation." Declaration of Robert van Galen in Further Support of Petitioners' Motion to Compel, dated July 27, 2012 ("Reply van Galen Decl.") ¶ 15.

Further, Chadbourne does not dispute that the documents sought in the Second Subpoena are directly related to the detailed information as to the events that preceded and resulted in the specific fraudulent transactions identified in the Writ. This detailed information is set forth in

---

[2] Notably, Chadbourne did not challenge the First Subpoena on this "for use" ground.

the Declaration of Tom Einertsen in Support of Petitioners' Motion to Compel, dated July 6, 2012 (ECF No. 25) ("Second Einertsen Declaration"), which serves not only as a road map (explaining how the corporate stock and asset deals, shareholder meetings, financing arrangements, corporate formations, and corporate dissolutions interrelate and ultimately lead to the stripping of Okean's valuable assets), but also an organization chart of sorts (illustrating how the individuals and entities involved in these events and transactions are related). That is, the Second Einertsen Declaration "connects the dots" between and among the allegations in the Writ, the events that were the precursor to and springboard for those in the Writ, the document requests in the First Subpoena, and the document requests in the Second Subpoena. Examples of this connectedness include the following:

- Einertsen sets forth a step-by-step account of the "upstream companies" and individuals who were involved in the corporate transactions and events leading up to and resulting in the two components of the fraud alleged in the Writ (fraudulent transfer of Okean's stock shares and of the loan receivables). The specific transactions – e.g., the Aker Yards-FLC West Share Purchase Agreement, the FLC West-Templestowe[3] Facility Agreement, the FLC West shares pledge, the FLC West-Wadan Holding Asset Purchase Agreement, two specific special shareholders, the standstill agreement regarding the WYGAS bankruptcy, and the WYGAS receiver's report – are the subject of the correspondingly specific document requests.

- Einertsen further sets forth specific email communications and correspondence involving specifically identified Chadbourne attorneys. These specific communications (copies of which are annexed to the Second Subpoena) are the subject of equally specific document requests.

Thus, because the Second Subpoena requests discovery of the specific transactions, corporate acts and related occurrences that immediately preceded and gave rise to the fraudulent

---

[3]   It is salient that Chadbourne has <u>not</u> denied or refuted Mr. Einertsen's well-reasoned conclusion that Templestowe Trading Corporation is the unnamed British Virgin Islands company by whom Chadbourne was retained as indicated in the Putintseva Declaration ¶ 2 (ECF No. 12).

scheme that is the subject of Okean's claims in the Dutch Litigation, such discovery will most assuredly be used in that Dutch Litigation.

Second, Chadbourne's "for use" argument is also contrary to the controlling case law. Section 1782 plainly requires only that the requested discovery be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). The Supreme Court decisively ruled in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 258-59 (2004), that discovery sought pursuant to Section 1782(a) "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings" and may be properly sought "for use" in a proceeding that is "within reasonable contemplation."

> In 1964, when Congress eliminated the requirement that a proceeding be "judicial," Congress also deleted the requirement that a proceeding be "pending." . . . See . . . Smit, International Litigation 1026 ("It is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.").

Id. (citations omitted).

As Mr. van Galen explains in his Reply Declaration, Okean's ongoing investigation of the claims at the heart of the Dutch Litigation has "uncovered a fraudulent scheme that is even broader in scope – both in terms of the temporal scope and the transactions implicated" – than that known at the time the Writ was filed and the Dutch Litigation commenced. Reply van Galen Decl. ¶ 15. Given the nature of this information, Mr. van Galen has been asked by Okean to assess what claims can be brought against certain possible additional defendants – the very same entities and individuals who are the focus of the document requests in the Second Subpoena: Templestowe Trading Corporation; Wadan Holding S.a.r.l.; Harm Frederick Blik; Philippe Meyer; Igor Yusufov; and Vitaly Yusufov. Id. The production of documents "for use" in this contemplated litigation would thereby also serve the requirements of Section 1782 discovery.

4

Chadbourne is likewise wrong in reading into Section 1782's "for use" requirement the need for a petitioner to establish the merit of the foreign action. In this regard, Chadbourne's challenge to the applicability of the Dutch Civil Code to Okean's claims of fraud and voidable transactions in the Dutch Litigation and its criticism of Okean for failing to show what subpoenaed discovery would be used for Okean to successfully prove each of the elements of its claims (Chadbourne Opp. Br. at 5) virtually transforms Okean's motion to compel compliance with a Section 1782 subpoena into a summary judgment motion on Okean's Writ. Chadbourne is just plain wrong that these merits and proof components are part of the "burden under Section 1782 (id.)." See also Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd., 785 F. Supp. 2d 434, 438-39 (S.D.N.Y. 2011) (holding that the documents sought from respondent banks were "for use" in a foreign proceeding even where the complaint in that proceeding did not specifically identify those banks and finding that "in order to prove the underlying fraud, [petitioner] may very well need some of the bank documents it is requesting from respondents."); In re Application of Grupo Qumma, No. M 8-85, 2005 WL 937486, at *1-2 (S.D.N.Y. Apr. 22, 2005) (granting Section 1782 application and holding that requested discovery was "for use" in a foreign proceeding even though petitioner and respondent disagreed about whether the Mexican court had ruled that no further evidence would be permitted).

Chadbourne's "for use" objection to the Second Subpoena is thus wrong on both the facts and the law,[4] and should be rejected by this Court.

---

[4] It is therefore not surprising that Chadbourne's "for use" argument is devoid of any supporting case law. While Chadbourne does *cite* three cases (Opp. Br. at 4-5), none of those cases has anything to do with the "for use" requirement under Section 1782. See Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (where what is quoted is the text of Section 1782 itself; why Chadbourne did not simply quote and cite to Section 1782 is puzzling); In re Godfrey, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007) (a case cited for the undisputed principle that Petitioners must establish Section 1782's three requirements, but

5

II.  **CHADBOURNE CONTINUES TO MISAPPREHEND THE HOLDING OF GODFREY AND THE SO-CALLED "MINORITY VIEW" REGARDING THE LOCATION OF REQUESTED DOCUMENTS (AS OPPOSED TO SUBPOENAED PERSONS)**

Persisting in pushing this Court to adopt what it claims is the majority view of In re Godfrey, 526 F. Supp. 2d 417 (S.D.N.Y. 2007), Chadbourne continues to dismiss the salient differences between that case and the situation here.  More significantly, Chadbourne incorrectly characterizes as "the minority view of a sister court" Judge Jones's decision in In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) – despite the fact that it is Judge Jones's decision that has been followed by both of the district courts in this Circuit who have analyzed the "location" issue.

In touting the Godfrey decision, Chadbourne fails to acknowledge that neither of the two respondent corporations were deemed to be "found" in the district, because neither corporation was incorporated or headquartered in the district; nor did they engage in systematic and continuous activities in the district.  526 F. Supp. 2d at 422.  Judge Rakoff therefore granted the corporate respondents' motion to quash.  Id. at 424.  Further, the determination that one of the individual respondents in Godfrey was "found" in the district was due not to his residence or employment in the district, but rather on the basis of "tag jurisdiction" – i.e., he was personally served with a subpoena while physically present in the Southern District.  Id. at 422.  Because the petitioners in Godfrey did "not even allege" that the respondent resided, was employed, or regularly transacted business in person within 100 miles of the district, Judge Rakoff quashed the Section 1782 deposition subpoena.  Id. at 422-23.  With respect to the documents requested from the corporate and individual respondents, Judge Rakoff exercised its discretion and quashed the

---

otherwise saying nothing about the "for use" requirement); and In re Kolomoisky, No. M19-116, 2006 U.S. Dist. LEXIS 58591, at *6-10 (S.D.N.Y. Aug. 18, 2006) (addressing the first ("reside (or be found)") – not the second ("for use") – requirement under Section 1782).

6

document subpoena as well, given that "the connection to the United States [was] slight at best" (based on the existence of "tag jurisdiction" only – i.e., none of the respondents resided, worked or transacted business here and the documents were not located here). Id. at 424.

As Okean is seeking document discovery from Chadbourne, a global firm headquartered in New York City that "operates as a single, integrated partnership" and – all parties agree – is found and resides here, Godfrey is plainly inapposite. On the other hand, there is plenty of common ground with Gemeinshcaftspraxis, where Judge Jones ordered the respondent corporation McKinsey, a worldwide consulting firm headquartered in the Southern District, to produce documents located in its German branch office pursuant to a Section 1782 application. And, far from the pejoratively described "minority view of a sister court" (Chadbourne Opp. Br. at 3), it is Judge Jones's decision – based soundly on the express statutory text of Section 1782 – that two other district courts in this Circuit have followed. See In re Application of Eli Lilly & Co., No. 3:09MC296 (AWT), 2010 U.S. Dist. LEXIS 59121, at *12-13 (D. Conn. June 15, 2010); Minatec Fin. S.a.r.l. v. SI Group, Inc., Civ. No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802, at *13 n.8 (N.D.N.Y. Aug. 18, 2008). Tellingly, Chadbourne can cite to no decision in this Circuit that has followed Godfrey; rather, Eli Lilly and Minatec adopted the reasoning and holding of Gemeinshcaftspraxis.

### III. CHADBOURNE ALSO MISAPPREHENDS THE VERY LIMITED DUTCH DISCOVERY RULE AND CONTINUES TO IGNORE THE SECOND CIRCUIT'S REJECTION OF A "QUASI-EXHAUSTION REQUIREMENT"

Chadbourne continues to launch its meritless charge that Okean was somehow obligated to seek the documents requested in the Second Subpoena by means of party discovery in the Dutch Litigation, rather than through the Section 1782 application. Okean is thus forced to reiterate two very plain facts. First, there is no obligation under Section 1782 for Okean to seek

the discovery initially from the Dutch court. And second, Dutch courts are not empowered to order the discovery that Okean seeks.

As to the first point, the Second Circuit has explicitly rejected the notion that petitioners must attempt to obtain the documents they seek within the foreign litigation before seeking Section 1782 discovery – an explicit rejection that Chadbourne inexplicably continues to ignore. See Malev Hungarian Airlines v. United Techs. Int'l Inc., 964 F.2d 97, 100 (2d Cir.) ("requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history"), cert. denied, 506 U.S. 861 (1992); Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1098 (2d Cir. 1995) ("Relying on the plain language of the statute, this Court has also refused to engraft a 'quasi-exhaustion requirement' onto Section 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court." (quoting Malev Hungarian Airlines, 964 F.2d at 100)).[5]

And as for the second point, Mr. van Galen's initial Declaration (ECF No. 17) clearly delineated the scope of discovery in Dutch courts and its governance by the "very limited rule" of Article 843(a) of the Dutch Code of Civil Procedure. Labeling Mr. van Galen's explanation of the very limited nature of party discovery under Dutch law as "jaundiced" and incorrect, Chadbourne cites to an article by Charles Gielen. Because Chadbourne completely misinterprets Mr. Gielen's article – which concerns the overlap between Dutch discovery law and the

---

[5] In this regard, Chadbourne turns on its head the clear directive of In re OOO Promnefstroy, No. M 19-99, 2009 U.S. Dist. LEXIS 98610 (S.D.N.Y. Oct. 15, 2009), in which Judge Richard Sullivan (quoting Euromepa) held that "courts must look for 'authoritative proof' that the foreign jurisdiction would reject the § 1782 assistance." Id. at *20 (emphasis added). Once again, Chadbourne's challenge to Mr. van Galen's Declaration regarding the receptivity of Dutch courts to Section 1782 discovery (see Chadbourne Reply at 20-21) – without providing this Court with anything remotely resembling "authoritative proof" that the Dutch courts reject such discovery – should be dismissed as factually and legally unfounded.

procedural rules governing protection of trade secrets in intellectual property cases – Mr. van Galen's presentation of the narrow limits placed on discovery under Dutch law stands unrefuted. Indeed, as evidenced by his Declaration, Mr. Gielen agrees with Mr. van Galen's explanation. Declaration of Charles Gielen in Further Support of Petitioners' Motion to Compel, dated July 27, 2012, ¶ 4.

### IV. OKEAN HAS MADE THE REQUISITE SHOWING THAT THE ATTORNEY-CLIENT PRIVILEGE DOES NOT PRECLUDE DISCOVERY OF DOCUMENTS RESPONSIVE TO THE SECTION 1782 SUBPOENAS

Chadbourne cleverly continues its myopic view of the nature of its activities with respect to the entities, persons, and acts involved in the interconnected series of transactions and events both leading up to and resulting in the fraudulent scheme described in the Dutch Litigation. For example, as noted above, Chadbourne is silent as to Mr. Einertsen's apparently well-reasoned conclusion that the unnamed British Virgin Islands company that Chadbourne represents is Templestowe Trading Corporation. Templestowe – as evidenced by the documentary evidence included with the Second Einertsen Declaration was immersed in the "upstream companies" activity out of which the claims in the Dutch Litigation arose. Likewise, Chadbourne's refutation of the Okean investigation's information regarding Messrs. Giaccia and McCormack is carefully crafted. In this regard, for example, Chadbourne disclaims work by Messrs. Giaccia and McCormack on "the transactions challenged in the Writ" (Chadbourne Opp. Br. at 9). Okean stands by the investigative information as set forth in Mr. Einertsen's Declaration and respectfully requests that it be allowed to provide documentary evidence substantiating that information, which documentary evidence is in the process of being obtained.

### Conclusion

For the foregoing reasons as well as those in Okean's moving brief and its Memorandum of Law in Opposition to Respondent's Motion to Quash Subpoena (ECF No. 20), Okean

respectfully requests that this Court uphold its grant of Okean's application and the § 1782 Order directing Chadbourne to produce documents and grant Okean's motion to compel production of the discovery sought in the Second Subpoena.

Dated: New York, New York
       July 27, 2012

Respectfully submitted,

DICKSTEIN SHAPIRO LLP

By:   s/Deborah A. Skakel
     Deborah A. Skakel
     1633 Broadway
     New York, New York  10019-6708
     Telephone: (212) 277-6500
     Facsimile: (212) 277-6501
     skakeld@dicksteinshapiro.com

*Attorneys for Petitioners Okean B.V. and Logistic Solution International Limited*